Carl Medved and Helen Medved v. Commissioner.
Medved v. Commissioner
Docket No. 5400-70 SC.
United States Tax Court
T.C. Memo 1971-188; 1971 Tax Ct. Memo LEXIS 145; 30 T.C.M. (CCH) 776; T.C.M. (RIA) 71188; August 3, 1971, Filed. *145 Carl Medved and Helen Medved, pro se, 833 Cedar Ave., Long Beach, Calif. Robert H. Feldman, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: The respondent determined deficiencies in petitioners' income tax for the years 1966 and 1967 in the amounts of $249.60 and $366.71, repectively. Also in controversy are overpayments claimed by petitioners for 1966 and 1967 in the amounts of $113.23 and $232.72, respectively. The issues for decision are whether residential property located in Phoenix, Arizona was held for the production of income during the period September 1, 1966 through December 31, 1967; whether petitioners are entitled to deduct travel and other expenses connected with that property; and, whether several deductions claimed in petitioners' original returns but abandoned in their amended returns were properly reclassified and disallowed in the statutory notice of deficiency. Findings of Fact Petitioners resided in Long Beach, California when they filed their petition. Petitioners filed joint Federal income tax returns for 1966 and 1967 with the Western Service Center, Internal Revenue Service, 777 Ogden, Utah. *146 After examination of their returns commenced, petitioners filed amended joint Federal income tax returns for 1966 and 1967, claiming additional refunds of $113.23 and $232.72, respectively. Each of said amended returns was dated May 9, 1969 by petitioners. The statutory notice of deficiency, issued May 20, 1970, was based on the original returns for 1966 and 1967. That notice also recognized that the amended returns were filed. In 1957, petitioners purchased a personal residence in Phoenix, Arizona. They lived there until September 1964. Sometime prior to 1964 petitioner, Carl Medved, had some difficulty in finding employment in his trade as a machinist in Phoenix, Arizona. In 1963 he went to Los Angeles, california where he found a position as a machinist at MTW Missile Engineering. In or about September 1964 the petitioners obtained tenants for their Phoenix property and the family moved to Los Angeles to join Mr. Medved. In August of 1966 the petitioners were notified that their tenants were moving out of the property at the end of the month. Upon receipt of that notice, petitioners and their children returned to Phoenix for the purpose of painting the property, putting it in *147 order to restore it so that it could again be rented. The petitioners had four children. The eldest was not living with the petitioners in 1966. The next oldest child was in school at California Polytechnical Institute. Only two younger children were at home. They were then approximately 9 and 11 years of age. When petitioners arrived in Phoenix they found that the property was in a state of disrepair. The showers leaked, the caulking was out, water was leaking through into the other rooms. The roof leaked to such an extent that it subsequently became necessary to replace it. The walls also had to be replastered. Later when they attempted to use the heating system they found that the system had been left on by the departed tenants causing the boiler to rust away and that gas was leaking into the house. This required the replacement of the heating system. All the grass, shrubs, and citrus were in poor condition from lack of water and care. The condition of the property was such that it could not be rented until such time as repairs were made. After discovering the state of disrepair of the property in August or September of 1966 petitioner and his family returned to Los Angeles. *148 Because of his financial condition petitioner, Carl Medved, could not afford to hire a contractor to make the necessary repairs to the house. He had only a small sum of money in the bank and if he had attempted to sell the house in its deteriorated condition he would have lost thousands of dollars of his investment in the property. In the first part of September 1966 Mrs. Medved and two of their four children moved back into the residence in Phoenix and occupied it until approximately September 1, 1969, while Mr. Medved continued his employment in California. While they were in Phoenix, he rented a single room or a small apartment not large enough to accommodate his family. During this period, the two younger children attended public school in Phoenix. In Phoenix, Mrs. Medved would obtain the materials necessary for the repair work on the instructions of Mr. Medved and he would drive from Los Angeles on weekends for that purpose. He made frequent weekend trips to Phoenix for repairs and reconstruction of the property required by its deteriorated condition. Mr. Medved did a considerable amount of work on the property in an attempt to restore it to a rentable or salable condition *149 during his weekend trips. He installed a refrigeration system at a cost of approximately $1,500. Had he been able to work continuously on repairing the property it would have taken approximately three months to complete the repairs. Mrs. Medved also worked on the property to improve its condition. She painted and whitewashed; she irrigated, fertilized and pruned the trees and shrubbery. Mr. Medved would leave Los Angeles after work on a Friday night and drive straight through to Phoenix. He would undertake whatever repairs he could perform during Saturday and Sunday and then on Sunday night he would return to Los Angeles driving all night and going to work without having any sleep. His trips between Los Angeles and Phoenix for the purposes of working on the property in 1966 and 1967 varied. Sometimes he went every two weeks and other times he went every week and on occasion a three-week period would elapse between trips. Driving time between Los Angeles and Phoenix is approximately 18 to 20 hours during the two day weekend that he was able to stay there to do the work. This procedure continued over a period of approximately three years 778 from September 1966 until September *150 1969 when the necessary work was completed. No rental income was received from the property during this period. During school vacation periods Mrs. Medved and the children would return to Los Angeles so that the family could be together. At such times, they rented an apartment large enough for the family. Petitioners placed three classified ads in the Phoenix Gazette on May 11, 14 and 17, 1967, advertising the house for rent. No one appeared to inspect the property in response to the ads, however, several telephone calls were received. Petitioners were unable to rent the house because of its substandard condition. The house was first rented again in September 1969. In 1966 petitioners paid real estate taxes in the amount of $376.02 and interest on a home mortgage in the amount of $86.29. In 1967 petitioners paid real estate taxes in the amount of $398.34 and interest on the home mortgage in the amount of $52.31. On their Federal income tax return for 1967 petitioners claimed the deduction for gasoline taxes in the amount of $226. They were disallowed to the extent of $30. The disallowed amount of gasoline taxes was not claimed in the amended return for 1967. On their 1967 return *151 petitioners claimed a deduction for a casualty loss in the amount of $100. This deduction was disallowed in the statutory notice. It was not claimed on the amended return for 1967. On their original returns petitioners claimed itemized deductions for "away from home" expenses in the amounts of $1,000 and $1,800 for 1966 and 1967, respectively. Said amounts were disallowed in the statutory notice of deficiency. They were not claimed in the amended return filed by petitioner. Petitioners are not contesting the disallowance of the amounts of $1,000 and $1,800 for 1966 and 1967 claimed as away from home expenses or the amounts of $30 for gasoline taxes and $100 for casualty loss in 1967. In the amended returns and statutory notice, the parties computed net rental income as follows: * 13 1966:
Per Statutory Notice
Per Amended Return
Rental Expenses:
Rental Income
$ 945.00
$ 945.00
Depreciation
$ 367.34
$ 344.50
Real Estate Taxes
250.68
* 376.02
Home Mortgage Interest
57.53
* 86.29
Insurance
94.52
* 141.78
Utilities & Telephone
9.50
* 114.26
Travel, Transportation and Subsistence 160.00
939.57
2,066.51
3,129.36
Net Rental Income (Loss) $ 5.43 [2,184.36
*152 *13 1967:
Per Statutory
Notice
Per Amended
Return
Rental Income
0
0
Rental Expenses:
Real Estate Taxes
0
** $ 398.34
Home Mortgage Interest
0
** 52.31
Insurance
0
**
71.46
Utilities & Telephone
0
330.48
Travel, Transportation and Subsistence 0
0
$2,898.00
3,750.59
Net Rental Income (Loss) 0 $13,750.59 779 The parties have stipulated that petitioners have made expenditures in connection with the Arizona property and living or traveling as follows: 1966
Direct Expenses paid to Mortgagor
$ 1,344.00
Less amount credited to equity
739.91
$ 604.09
Additional Expenses Depr. - Acquisition Cost
$13,100.00
Remodeling Costs 1,675.90
$14,775.90
Less Land 1,000.00
$13,775.90
40 yr. life = $344.40 per yr
344.40
Utility chges & Phone exp
144.26
Air Trans Phnx/to L.A. (8-21-66)
26.36
Moving Costs
139.65
Meals while traveling - Mr. Medved
180.00
Meals for wife away from home
270.00
Car expense based on 14,505 miles at 10" per mile 1,450.50
$3,159.26
Less Income 945.00
Total $2,214.26
1967
Direct Expenses paid to Mortgagor
$1,296.00
Less amount credited to equity
773.89
$522.11
Transportation expenses - car 20 trips plus mileage in town
15,000 miles at 10" per mile
1,500.00
2,100 miles at 7" per mile 147.00 1,647.00
Other Expenses incurred
Irrigation Assessment
5.60
Electric
87.58
Gas
68.00
Water
34.34
Phone
134.96
Food Expenses for Mr. Medved while traveling and in Phoenix (71 days at $6.00 per day) =
426.00
Food Expenses for wife while in Phnx at $2.75 per day - 300 days 825.00
TOTAL $3,750.59
*153 Petitioner's residence in Phoenix was personal residential property rather than rental or investment property held for the production of income during the period September 1, 1966 through December 31, 1967 while it was occupied by petitioner's family. Opinion The Phoenix property was originally purchased in 1957 as a residence by the petitioners and it continued as their residence until about September 1964. It is undisputed that the property was devoted to the production of rental income in the two-year period from September 1964 to September 1966. It is petitioners' contention, which respondent disputes, that from September 1966 through December 31, 1967 the property retained its character as rental property or is to be treated as property held for the production of income. In Gilbert Wilkes, 17 T.C. 865 (1951) the Court pointed out that a transaction which was not originally entered into for profit may by later change become one for profit and likewise, a transaction entered into for profit may by later change become one for nonprofit. This view is well illustrated in Eugene H. Walet, Jr., 31 T.C. 461, affd. 272 F. 2d 694, where the *154 taxpayer purchased a house in 1944 with the intention of renting it to his divorced wife and actually received rent from the property for over a year but thereafter did not collect rent, and the Court found that in the taxable years at issue the property was held for the personal use of the taxpayer. 780 Permitting the taxpayer's former wife and son to occupy the house rent free in that case indicated an abandonment of taxpayer's intention to devote the property to an income producing purpose. A prior appropriation to income producing purposes may be nullified by reversion to the original status where the taxpayer's residence is rented and subsequently reoccupied as his own residence. W. H. Moses, 21 B.T.A. 226; [1]I.T. 3544, C.B. 1942-1, 156. The petitioners admitted that the condition of the property in September 1966 was such that major repairs had to be undertaken to avoid the loss of thousands of dollars on their investment. It is clear that if petitioners could have sold their property without financial loss at any time between September 1966 and December 31, 1967 they *155 would have done so even if they made no profit on the sale. They testified that they made some efforts to rent or sell in this period to no avail because of the condition of the property. The expenditures were incurred to minimize the potential loss. This is not a profit motive. We do not think petitioners originally purchased the property with the primary purpose of later selling it at a profit. We do not think that such was their purpose at any subsequent time pertinent hereto. As we indicated above, at most, petitioners were concerned with minimizing their loss on any potential sale. Petitioners also admitted that the property could not be rented until major repairs were completed. While they may have harbored the thought that they would rent the property at a future date when the repairs were completed, during the period from September 1966 to December 1967 the property was used as the personal residence of Mrs. Medved and two of the children. The petitioners were not "carrying on" a trade or business of renting property during that period and therefore the expenses incurred are not deductible. Eugene H. Walet, Jr., supra; Frederick H. Prince Trust, 35 T.C. 974. *156 Petitioners argue that they did not utilize the Phoenix property by choice or for personal convenience but because they wished "to return the property to income producing property". It is immaterial whether the petitioners occupied the Phoenix residence by choice or necessity. Many taxpayers are required to absent themselves from their families in pursuit of their occupations at considerable expense and if the absences are indefinite and not temporary, their "away from home" expenses are treated as non-deductible personal living expenses. Furthermore, the petitioners did not maintain two homes except in the summer months when Mrs. Medved and the children left Phoenix to join Mr. Medved in California. While petitioners argue that it was their intent at all times subsequent to August 1966 to hold the Phoenix property "for the production of income", in their original returns they claimed deductions of $1,000 in 1966 and $1,800 in 1967 for Mr. Medved's living expenses in Los Angeles as "out of town living expenses". This claim must have been predicated on petitioner's belief that his "home" was in Phoenix. When their returns for the taxable years at issue were examined and petitioners *157 discovered the government's position that Mr. Medved's Los Angeles expenses were not deductible because his employment there was indefinite and not temporary, they adopted the theory which they now urge upon the Court by filing amended returns. They claimed Los Angeles as their sole "tax home" and the Phoenix residence as rental or investment property. It must be concluded that at the time that petitioners filed their returns and for a period subsequent thereto they did not intend to hold the Phoenix property for the production of income. The adjustments made in the statutory notice in this case are based on petitioners' original returns for 1966 and 1967. These returns were filed upon petitioners' theory that Phoenix was their sole tax home and petitioner was thus entitled to deduct his "away from home" expenses in Los Angeles. No income or deductions were reported on the Phoenix residence for its period of rental in 1966, since petitioners believed that a net loss had resulted. The statutory notice disallowed the claimed "away from home" expenses of $1,000 in 1966 and $1,800 in 1967, since Los Angeles was petitioner's permanent place of employment. The statutory notice also picked *158 up the rental income on the Phoenix residence for 781 the first eight months of 1966, offset by related deductions, resulting in net rental income of $5.43. Such deductions included two-thirds (eight months) of the taxes and interest on this property, which had been claimed as itemized deductions. Finally, the statutory notice disallowed $30 worth of gasoline tax and a claimed casualty loss of $100 in 1967. Petitioners argue that the statutory notice is incorrect because it disallows taxes and other expense incurred in renting the property in 1966 and adds these items to their income twice. There is no substance to this argument. Petitioners do not appear to understand the mechanics of the computation. Respondent determines in the statutory notices that of the claimed itemized deductions for real estate taxes and interest expense on a home mortgage in the amounts of $376.02 and $86.29, two-thirds were attributable to rental of the Phoenix property and should be treated as deductions in arriving at net rental income. Accordingly, the amounts allowed as rental expenses are disallowed as itemized deductions to the extent of $250.68 and $57.53 for real estate taxes and home mortgage *159 interest, respectively. This treatment is proper under the statute. Petitioners are not entitled to deduct travel and other expenses connected with their residence at Phoenix, Arizona during period in 1966 and 1967 it was occupied by petitioners' family. Petitioners did not overpay their taxes for 1966 or 1967 in the amounts of $113.23 and $232.72, respectively. The adjustments in the statutory notice of deficiency are correct. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
*. Amended return shows as total of $604.09.↩
**. Amended return shows as total of $522.11.↩
1. See also Dr. J. C. Blalock, a Memorandum Opinion of this Court dated September 26, 1941.↩