JOEL HIRSCHEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE Respondent
Hirschel v. Commissioner
Docket No. 6165-78
United States Tax Court
T.C. Memo 1981-189; 1981 Tax Ct. Memo LEXIS 553; 41 T.C.M. (CCH) 1298; T.C.M. (RIA) 81189; April 21, 1981. Joel Hirschel, pro se. Ralph A. Eppensteiner, for the respondent. *554 WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1975 in the amount of $ 398.71. The issues presented for our decision are: (1) whether petitioner is entitled to deduct depreciation and maintenance expenses under sections 167(a)(2) [1] and 212(2) for a house purchased by petitioner and his brother from their mother and occupied rent free by his brother; and (2) whether petitioner may deduct under section 162 the amount by which the estimated cost of meals purchased before attending graduate school classes at night exceeded the estimated cost of eating at home, and if so, whether such amounts were substantiated. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of the filling of the petition in this case, petitioner resided in New York, New York. Petitioner was employed full time by the Western Electric *555 Company in 1973. In 1973 petitioner graduated from law school, and in 1974 was admitted to the bar in New York. Petitioner was employed as an attorney by Western Electric Company from the time of his admission to the bar until the present, with the exception of the time period January 1, 1975 through May 1, 1976, when he was employed as an attorney by the American Telephone and Telegraph Company. Issue 1. Depreciation and Maintenance Expense
In 1973, petitioner's mother announced that she was going to sell her house in Queens, New York, and move to Florida. Petitioner and his brother, Howard Hirschel ("Howard"), decided to buy their mother's home. On May 30, 1973, petitioner and Howard entered into a written contract which set forth their respective rights and duties with regard to the purchase of their mother's home. Under the contract, each brother was responsible for one-half of the purchase price. Howard was to have the exclusive right to use the property as his principal place of residence so long as he paid the property taxes and normal maintenance expenses, acquired sufficient insurance, and maintained the premises in good repair. Both parties were to pay equally *556 for any permanent improvements. In addition, each brother was prohibited from transferring his interest separately. On June 1, 1973, petitioner and Howard entered into a written contract with their mother for the purchase of her house, the price to be the fair market value as determined by an appraiser. One appraisal report was obtained which valued the property at $ 39,800. Of this amount, $ 7,000 was allocated to the land, $ 1,800 was allocated to the detached garage, and $ 31,000 was allocated to the main dwelling. Petitioner's mother conveyed the property to petitioner and Howard as tenants in common by a warranty deed executed and acknowledged on August 16, 1973. Prior to the purchase of his mother's house, petitioner did not talk to any real estate brokers in Queens or any other part of New York about real property, nor did he visit any other houses offered for sale. Howard resided in the house with his family from August 1973 until at least November 30, 1979. Sometime in the spring of 1979, Howard decided to move out of the house because he did not want his children attending New York City public schools. The house was offered for sale in the spring of 1979. A contract *557 of sale for the house was entered into as of August 27, 1979. The stated contract price as later amended was $ 52,000 and the anticipated net proceeds to be received by the sellers was $ 43,759.60. Prior to 1979, the house was never offered for sale. During the time of Howard's occupancy, petitioner never contracted for, demanded, or received rent from his brother. Howard paid the following expenses with respect to the house in the year 1975 pursuant to his obligations under the contract: real estate taxes in the amount of $ 959.96; maintenance and repair expenses in the amount of $ 1,287.96; and an insurance premium of $ 164. Howard's obligation to pay these expenses under the contract was not determined by reference to the rental value of the premises. The only expense paid by petitioner in the year 1975 with respect to the house was $ 64.80, which represented one half of the cost of materials for a new garage door. On his 1975 income tax return, petitioner claimed a deduction of $ 641.22 for depreciation and $ 64.80 for repairs with respect to the property. Issue 2. Educational Expense
During 1975, petitioner took graduate courses at the New York University *558 School of Law during evening hours after work to maintain and improve his skills in his employment as an attorney. All of petitioner's educational expense deduction relating to the courses was allowed by respondent, with the exception of a claimed meal expense in the amount of $ 180. The classes petitioner attended during 1975 were from 6:00 to 8:00 p.m. Petitioner typically arrived at home after class between 8:45 and 9:00 p.m. Petitioner ate each night before class in various restaurants in the vicinity of New York University. Petitioner estimated the difference between the average cost of a meal in a restaurant before class and the average cost of a meal eaten at home to be $ 3.00. Petitioner multiplied this incremental increase ($ 3.00) times the number of nights he attended class (60), to reach a claimed educational expense for meals in the amount of $ 180. Petitioner does not have receipts for the meals eaten in restaurants before class. OPINION Issue 1. Depreciation and Maintenance Expense
During 1973, petitioner and his brother Howard bought their mother's house as tenants in common. Under an agreement executed by the brothers, Howard was to have the exclusive *559 right to occupy the house as his principal place of residence so long as he paid the property taxes, insurance, and normal maintenance expenses. Neither brother could sell his interest in the house separately, and no rent was paid by Howard to petitioner. The issue before us is whether petitioner is entitled to deduct depreciation and a maintenance expense in 1975 with respect to his interest in the property. Petitioner argues that he purchased and held his interest in the house as property held for the production of income and thus is entitled to deduct depreciation and maintenance expenditures under sections 167(a)(2) [2] and 212(2). [3] Conversely, respondent argues that petitioner's interest in the residential property was not property held for the production of income. We agree with respondent that petitioner did not hold his interest in the residential property during 1975 for the production of income, and thus he is not entitled to take deductions for depreciation and maintenance expenditures. *560 In order for petitioner to take a depreciation deduction under section 167(a)(2) and a maintenance expense deduction under section 212(2), he must show that he held his interest in the residential property for the production of income during the year in issue. Meredith v. Commissioner, 65 T.C. 34, 41 (1975). Whether property is held for the production of income is a question of fact to be determined from all the facts and circumstances. Johnson v. Commissioner, 59 T.C. 791 (1973), affd. 495 F.2d 1079 (6th Cir. 1974), cert. denied 419 U.S. 1040 (1974). In Walet v. Commissioner, 31 T.C. 461 (1958), affd. 272 F.2d 694 (5th Cir. 1959), petitioner purchased a house with the intention of renting it to his former spouse and their son, and actually received rent in a previous year, but thereafter chose not to receive rent and had no expectation of any further rental income so long as his former wife and son continued to live in the house. In denying deductions for depreciation and maintenance expenses, we held that the property was not held for the production of income during the years in *561 issue, but rather was for the personal use of petitioner's former wife and minor child. Similarly, in Prince Trust v. Commissioner, 35 T.C. 974 (1961), a trust owned residential property which the settlor's son, a beneficiary, was entitled to occupy rent free for his lifetime. Again we held that the property was not held for the production of income during the years in issue and thus deductions for repairs and maintenance were disallowed. Petitioner relies on section 1.212-1(b), Income Tax Regs., which provides in pertinent part: (b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. * * * [O]rdinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in *562 question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. However a precondition to the applicability of this provision is the determination that the property is indeed held for the production of income. Once that determination is made, the subsequent absence of economic indicators of profit during any given period of time will not automatically preclude a deduction. Newcombe v. Commissioner, 54 T.C. 1298 (1970). In the instant case, we are unable to find that petitioner held the residential property during 1975 for the production of income. Predominantly personal considerations governed the timing of the purchase and sale--indeed the particular house purchased. Under the terms of the agreement, petitioner's brother enjoyed the exclusive right to occupy the house rent-free, for as long as he desired. Petitioner was prohibited *563 from selling his interest in the house separately. Thus petitioner could not hope to reap any rental income or any gain on the property from its sale until his brother decided that he personally no longer wanted to live there. The mere expectation that the property will appreciate in the future and thus might eventually be sold at a profit is not sufficient to establish that the house was held for the production of income during the year in issue. Jasionowski v. Commissioner, 66 T.C. 312, 323 (1976). Therefore, petitioner is not entitled to deductions for depreciation and maintenance expenses for the residential property he owned with his brother for the year 1975. Issue 2. Educational Expense
During 1975, petitioner attended graduate courses after work, and deducted the amount by wich eating in restaurants before class exceeded the amount which he would have spent had he eaten at home. Petitioner contends that the additional expense of eating in restaurants was necessarily incurred as part of attending graduate courses at night, the cost of which was allowed as an educational expense deductible under section 162. Respondent argues that the expense of *564 eating in restaurants is a personal, nondeductible expense. We agree with respondent. The general rule is that the cost of meals is a nondeductible, personal expense. Section 1.262-1(b)(5), Income Tax Regs.; Sutter v. Commissioner, 21 T.C. 170 (1953). In the instant case, petitioner chose when and where he would eat supper. The fact that attending classes at night made it inconvenient for petitioner to eat at home does not turn a personal expenditure into an ordinary and necessary business expense. Many working people are constrained to buy meals in restaurants or cafeterias when they would rather eat at home, but the cost of the meals is still a personal, nondeductible expense. [4] Therefore, petitioner is not allowed to deduct the additional cost of eating in restaurants as part of a deductible educational expense under section 162. Because we hold the cost of the meals to be nondeductible, we need not reach the issue of whether petitioner adequately substantiated his meal expenses. *565 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.↩
2. Sec. 167(a) provides as follows: SEC. 167. DEPRECIATION. (a) GENERAL RULE.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)-- (1) of property used in the trade or business, or (2) of property held for the production of income. ↩
3. Section 212 provides as follows: SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩
4. See Moscini v. Commissioner, T.C. Memo. 1977-245 (cost of eating lunch in restaurants while on patrol as a police officer is a nondeductible personal expense); and Antos v. Commissioner, T.C. Memo. 1976-89↩ (cost of eating supper when working late in the office is a nondeductible, personal expense).