FREDERICK H. PRINCE TRUST, WILLIAM WOOD PRINCE AND JAMES F. DONOVAN, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67026. Filed March 23, 1961.

*Dana M. Swan, Esq.*, for the petitioner.
*J. Frost Walker, Jr., Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax, as follows:

| Year | Deficiency |
| --- | --- |
| 1952 | $2, 844. 49 |
| 1953 | 3, 381. 61 |
| 1954 | 2, 919. 72 |

Amounts of $4,302.23, $4,391.70, and $4,728.01 were expended by trustees in 1952, 1953, and 1954, respectively, in connection with real property which formed a portion of the trust corpus. The issue is

whether said amounts were properly deducted as expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income within the meaning of section 23(a)(2) of the Internal Revenue Code of 1939 and section 212(2) of the Internal Revenue Code of 1954.

All of the facts have been stipulated and they are found accordingly.

Petitioner, Frederick H. Prince Trust, is a trust established by a trust instrument dated June 3, 1932. William Wood Prince and James F. Donovan were trustees of said trust during the years in question. They filed U.S. Fiduciary Income Tax Returns for the taxable years ended December 31, 1952, 1953, and 1954 with the district director of internal revenue at Burlington, Vermont.

By trust instrument dated June 3, 1932, Frederick H. Prince, the settlor of the trust, transferred to himself and his wife, Abbie Norman Prince, as trustees, 20,000 shares of $100-par-value common stock of F. H. Prince & Co., Inc. Under the terms of the trust instrument, the settlor made provision for a life income to certain of his relatives and descendants and in particular for his son, Frederick H. Prince, Jr., hereafter sometimes called Prince, Jr., who was born in 1885. The trust agreement provided, in part, as follows:

### ARTICLE I.

Section 1. The trust hereby declared and created shall continue during the period which shall commence on the date of this trust deed and shall terminate at the expiration of twenty-one years after the death of the survivor of my wife, Abbie Norman Prince, my son, Frederick Henry Prince, Jr., his son, Frederick Henry Prince, 3d, my brother, Charles A. Prince, my cousin, Bernard Henry-Wood, Jr., his two sons, Bernard Henry-Wood, 3d, and William Henry-Wood, Lewis Cass Ledyard, 3d, of New York City, grandson of Gertrude Prince, Louis Livingston Lorillard, son of Edith Norman Lorillard of Newport, Rhode Island, and myself.

### ARTICLE II.

Section 1. During the continuance of this trust, the trustees shall collect the income arising from the trust estate and after paying therefrom all taxes and other expenses and charges incident to the care and management of the trust estate and to the execution of the trusts hereof, including the compensation to the trustees for services in the trusteeship specified in Section 4 of ARTICLE III, shall make the following disbursements from the net income arising from the trust estate, * * *.

\* \* \* \* \* \* \*

(b) To my son, Frederick Henry Prince, Jr., during his life, such amount of net income not exceeding Fifty Thousand Dollars ($50,000.) per year as the trustees may from time to time in their absolute discretion deem necessary for his comfortable maintenance and support. * * *

\* \* \* \* \* \* \*

(i) During the life of my son, Frederick Henry Prince, Jr., and/or of any of his descendants, the trustees may in their absolute discretion apply so much of the net income not exceeding Fifty Thousand Dollars ($50,000.) in any one year as they may deem proper for the purpose, to the maintenance as a residence estate for him and/or his descendants, of the estate known as "Princemere" located in

Wenham, Massachusetts, or such other residence estate as he or his descendants with the approval of the trustees may from time to time select, or in lieu thereof, the trustees may in their sole discretion, from time to time pay the sum of Fifty Thousand Dollars ($50,000.) per year to Frederick Henry Prince, Jr. during his life * * *.

* * * * * * *

(k) All net income not disposed of in accordance with the provisions of this ARTICLE II shall be accumulated and added to the trust estate as a part of the capital thereof.

* * * * * * *

Section 3. Upon the termination of the trust period, the trustees shall pay over, transfer and convey free from trust and in such proportions as the trustees shall, in their absolute discretion, deem best, fifty per cent. (50%) of the capital of the trust estate (a) to and among the male children and/or more remote male issue of myself and of my cousin, Bernard Henry-Wood, Jr., who are then serving F. H. Prince & Co. Inc. as directors, officers or employees * * *. So much of the capital of the trust estate as is not disposed of under the foregoing provisions of this Section 3, shall, upon the termination of the trust period, be paid over by the trustees, absolutely and in fee simple and discharged of all trusts * * * [in certain specific ways].

### ARTICLE III.

Section 1. * * * I authorize and empower the trustees, in their discretion: (1) to continue the whole or any part of the trust estate in the form or investments in which the same is received by the trustees without any liability for loss in so doing; and (2) to sell, mortgage, pledge, lease, exchange, partition, invest and reinvest and generally to deal with and dispose of all or any part of the trust estate (otherwise than by gift) as fully as the trustees could do if the trustees were the absolute owners of the trust estate freed from all trusts; PROVIDED, NEVERTHELESS, that all capital sums derived from any change in the investments of the trust estate and all income accumulated under ARTICLE II, Section 1, paragraph (k), shall be invested only: (a) in the capital stock and/or securities of said F. H. Prince & Co. Inc., * * * or (b) in the capital stock and/or securities of Chicago Stock Yards Company of Maine, * * * or (c) in brokers' loans secured by securities listed on the New York Stock Exchange, or (d) in securities which are legal for savings banks under the laws either of Rhode Island or Massachusetts or New York or which are legal for insurance companies under the laws either of Massachusetts or New York; and PROVIDED, FURTHER, (a) that during my life changes in the investments of the trust estate shall be made only upon my written direction or approval, * * *

In 1935 Prince, Jr., purchased certain land in Fauquier County, Virginia. In 1940 he conveyed the land and improvements to his wife. In August 1948 the settlor assigned to the trustees of the trust claims totaling $156,561.64 against his son, Prince, Jr. The assignment recited these claims arose out of loans made to the son in connection with the purchase of the land in Virginia and the construction of improvements on it. The assignment was made subject to and contained the condition that within 30 days the trustees be tendered a deed to the Virginia property. Upon tender of the deed, the assignment directed the trustees, as follows:

Then, and in any such case,

1. The Trustees will accept said Deed and in consideration for the premises thereby conveyed, will forthwith release and discharge my said son, Frederick H. Prince, Jr. from any and all liabilities on account of all claims against him by this instrument assigned to the Trustees; and will, from and after the receipt of such Deed so long as my said son shall live and be one of the persons occupying the premises thereby conveyed, permit my said son to occupy said premises as a dwelling for himself and family free from rent and from all taxes assessed against said premises, which such taxes so assessed are to be paid by the Trustees without expense to my said son, but will not permit my said son to lease said premises, or any part thereof; * * *

2. I, or my legal representatives or assigns, will reimburse the Trustees for all taxes so assessed against said premises during the life of my said son while he is one of the persons occupying the same as a dwelling for himself and family as herein above provided.

The trustees of the trust at that time, the settlor's wife and a cousin of the settlor, accepted the assignment subject to its terms and conditions.

In September 1948 Prince, Jr.'s wife reconveyed the Virginia property to him and on the same day he and his wife conveyed the property to the trustees of the trust. Also on the same day the trustees released Prince, Jr., from liability on account of all claims against him arising from loans totaling $156,561.64 made to him by his father, the settlor, in connection with the purchase of the Virginia property and its improvements. By the same instrument the trustees granted Frederick H. Prince, Jr.—

permission, from and after September 3, 1948 so long as he shall live and be one of the persons occupying said premises, to occupy said premises as a dwelling for himself and family free from rent and from all taxes assessed against said premises, which such taxes so assessed are to be paid by the Trustees without expense to the said Frederick H. Prince, Jr., but will not permit him to lease said premises or any part thereof.

The trustees paid Prince, Jr., $100,000 during each of the years 1952, 1953, and 1954. Prince, Jr., and his wife have resided continuously on the Virginia property since 1936. At no time since 1936 has the Virginia property been income-producing nor has it been offered for sale or for rent. In addition to the above payments, the trustees spent the following amounts in connection with the Virginia property:

| Year ended Dec. 31— | Purpose | Amount | Total |
|---|---|---|---|
| 1952 | Insurance | $925.94 | |
| 1952 | Repairs | 3,376.29 | $4,302.23 |
| 1953 | Insurance | 1,666.77 | |
| 1953 | Repairs | 1,107.03 | |
| 1953 | Salaries | 1,280.00 | |
| 1953 | Maintenance of grounds | 318.70 | |
| 1953 | Social security tax on caretaker's wages | 19.20 | 4,391.70 |
| 1954 | Insurance | 263.03 | |
| 1954 | Repairs | 2,468.68 | |
| 1954 | Salaries | 1,410.00 | |
| 1954 | Maintenance of grounds | 558.10 | |
| 1954 | Social security tax on caretaker's wages | 28.20 | 4,728.01 |

These amounts were claimed as deductions on the fiduciary income tax returns filed by the trustees for the years 1952, 1953, and 1954.

Respondent, in the statutory notice, determined that these amounts were not deductible under section 23(a)(1) or (2) of the Internal Revenue Code of 1939 or under section 162(a) or 212 of the Internal Revenue Code of 1954.

The issue here is whether the Virginia property was property held for the production of income within the meaning of sections 23(a)(2) of the Internal Revenue Code of 1939 and 212(2) of the Internal Revenue Code of 1954. We hold it was not.

The facts in this case are much like *Eugene H. Walet, Jr.*, 31 T.C. 461. There the owner of the house, for personal reasons, allowed his former wife and son to occupy it during the years in question rent free. He sought deductions for depreciation and repairs and we held they were not allowable as he was not holding the property during the years in question for any income-producing purpose. Here the owner of the property, the trust, granted a principal beneficiary the right to occupy the property rent free during the years in question and it seeks deductions for repairs and maintenance. The only difference is that here there was more compulsion to grant the rent-free occupancy. Upon the issue of whether the property was, during the rent-free occupancy years, being held for the production of income, the reason why rent-free occupancy is granted is immaterial. It is the *fact* that the owner does grant, during the years in question, rent-free occupancy, that precludes the claim of holding the property for the production of income.

Petitioner's burden was to show the property was being held during the very years in question for the production of income. In *St. Louis Union Trust Co., et al., Trustees*, 40 B.T.A. 165, the testamentary trust sought deductions for repairs, maintenance, insurance, and other expenses, attributable to a dwelling occupied, at the direction of testator, rent free by a beneficiary. While this case was decided before the Revenue Act of 1942 [1] added section 23(a)(2) to the statute, the contention was made the expenditures involved were ordinarily and necessarily incurred for the preservation of the property of the trust. In rejecting the contention we said:

The property was being retained and for all that appears will continue to be retained until an indefinite time in the future, not for purposes of lease or sale nor for any other purpose connected with a pecuniary benefit of the trust. * * *

The same could be said in the instant case. The Virginia property was held by the trust and obviously will be retained by the trust for an

---

[1] Sec. 121(a), Revenue Act of 1942.

indefinite time in the future, not for the purposes of lease or sale nor for any other income-producing purpose.

We hold for respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*