ALFRED I. DUPONT TESTAMENTARY TRUST, THE FLORIDA NATIONAL BANK OF JACKSONVILLE, EDWARD BALL, WILLIAM B. MILLS, J. C. BELIN, T. S. COLDEWEY, W. L. THORNTON, AND ALFRED D. DENT, TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 330–72. Filed April 15, 1974.

*Herbert R. Berk,* for the petitioner.
*Jon T. Flask,* for the respondent.

OPINION

RAUM, *Judge:* Petitioner is a testamentary trust created under the will of Alfred I. duPont, who died in 1935. He had owned a magnificent estate of some 300 acres in Delaware. In addition to the large "mansion house," the estate was improved by formal gardens, three manmade lakes, a greenhouse, statuary, large monuments, an elaborate colonnade, a classical temple, an extensive system of roadways, bridges, walkways, stables, water pumping plants, and various other buildings and structures. A large staff was employed to maintain the property. The entire estate—mansion, grounds, and all other buildings and structures—was known collectively as "Nemours." In 1925 Mr. duPont transferred Nemours to a wholly owned corporation which was created for that purpose and which was known as Nemours, Inc. Between 1925 and 1929 Nemours appeared to be the only asset of consequence owned by the corporation. Shortly after the foregoing transfer the corporation, as "lessor," entered into an agreement with Mr. duPont and his wife, as "lessees," whereby it agreed to "lease" Nemours to

them for their joint lives plus the additional period of the life of the survivor after the death of the other. The stated "rent" was $1 per year. As further consideration, however, the duPonts agreed to pay all maintenance expenses and real estate taxes applicable to the property. A change in the arrangement occurred in 1929, when Mr. duPont transferred to the corporation 20,000 shares of preferred stock of Almour Securities, Inc., which had a then fair market value of $2 million and which paid dividends of $100,000 a year. An amendment to the 1925 agreement was then executed whereby it was agreed that since these income-bearing securities were transferred to the corporation, it would pay the real estate taxes assessed against Nemours as well as all the expenses for the upkeep and repair of the entire property, except the expenses incurred inside the "Mansion House" and the salaries of the personal employees of Mr. and Mrs. duPont. The duPonts had meanwhile (in 1926) acquired another home, in Florida, which became their principal residence; but a full-time staff kept Nemours open for them for any use which they or the survivor of them might make of it, and it was in fact thus used by them, and by Mrs. duPont after her husband's death, on the average of 2 months per year until sometime during the first half of the 1960's, when it again became the principal residence of Mrs. duPont until her death in 1970.

Upon Mr. duPont's death in 1935 the stock of Nemours, Inc., passed to his executors, who dissolved the corporation in 1937,[9] and who thereupon undertook to maintain Nemours in accordance with the 1925 agreement as amended in 1929. At some later time not disclosed in the record, the property along with all other residuary assets of Mr. duPont's estate was transferred by the executors to the testamentary trust, the petitioner herein, which then continued to provide for the maintenance of Nemours (except as it related to the interior of the mansion). The trust thus expended $255,753.38 in 1966 and $388,735.93 in 1967 for the upkeep of Nemours, for which it claimed deductions from gross income on its returns for those years. Its income for each of those years was derived almost exclusively from dividends and interest, and exceeded $13 million, over $11 million of which was distributed to Mrs. duPont in each year.

The principal question before us is whether the foregoing expenditures of $255,753.38 and $388,735.93 in 1966 and 1967, respectively, are deductible from gross income. The Government contends initially that the cost of maintaining Nemours represented merely the payment of personal living expenses of the primary beneficiary of the trust, the deduction of which is explicitly forbidden by section 262 of

---

[9] Throughout its existence the corporation does not appear to have owned any assets of consequence other than Nemours and the Almour preferred stock or assets related thereto.

the 1954 Code.[10] There is much force to this position, for the arrangements under which Mr. and Mrs. duPont had the possession and enjoyment of Nemours amounted in substance to little more, if anything, than life estates in that property, and the expenses in question were plainly those which a life tenant would incur in connection with his or her personal use of the property. Living at Nemours was life on a grand scale, and the fact that Mrs. duPont, because of her advancing years and physical condition, was unable to take full advantage of its facilities in no way affects the nature of these expenses as being her nondeductible personal living expenses in the circumstances.[11]

However, we need not rest our decision on section 262, because, in our view, the very statutory provisions upon which petitioner relies to support the deduction are not applicable. Those provisions are contained in section 212 of the 1954 Code, which provides:[12]

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; * * *

A knowledge of the history of the provisions of section 212 is essential to an understanding of their scope and meaning.

Section 212 had its origin in a 1942 amendment to the 1939 Code.[13] Prior thereto, section 23 (a) (1) of the 1939 Code had allowed deductions for ordinary and necessary expenses "in carrying on any trade or business." The 1942 amendment extended these deductions to certain nonbusiness situations. In form, the old deduction for business expenses was retained in section 23 (a) (1) (A) of the 1939 Code, and the new deduction for nonbusiness expenses was set forth in the provisions of section 23 (a) (2) of that Code. Although the new legislation dealt with the nonbusiness deduction in a single paragraph, it provided for the deduction in two separate, although related, situations, namely, (i) expenses "for the production or collection of in-

---

[10] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[11] It has been suggested that Mrs. duPont's injury to her leg made it impossible for her to return to her Florida home and that it was only for that reason that she remained at Nemours during the last 6 or 8 years of her life. We do not find this credible. No convincing evidence was presented to prove that she could not have been moved to Florida, and we are satisfied that she stayed at Nemours of her own volition, for whatever reason.

[12] Although these provisions relate to deductions of an "individual," there is no dispute that they are made applicable to trusts like petitioner by reason of sec. 641(b) of the Code.

[13] Sec. 121(a) of the Revenue Act of 1942, ch. 619, 56 Stat. 819.

come," and (ii) expenses "for the management, conservation, or maintenance of property held for the production of income." When the 1954 Code was enacted it was apparently thought desirable to make even more clear the difference between these two situations, and the first was incorporated in section 212(1) while the second was included in section 212(2). We hold that neither section 212(1) nor section 212(2) affords any basis for the deductions claimed herein.

We may readily dispose of any argument that might be founded upon section 212(1). It is concerned only with expenses paid or incurred during the taxable year "for the production or collection of income." And there is no basis whatever in this record for any contention that the expenses involved herein were paid or incurred for the production or collection of income. At most, the only income that petitioner might theoretically have received (but apparently did not receive) in respect of the 1966 and 1967 expenditures was the nominal rental of $1 a year from Mrs. duPont. We reject as wholly without merit the notion that the expenditures herein qualify for deduction under section 212(1).

Petitioner has relied in the main upon section 212(2), which deals with "expenses for the management, conservation, or maintainenance of property held for the production of income." It may well be conceded for this purpose that the expenses in question were for the "management, conservation, or maintenance" of Nemours. The critical question, however, is whether Nemours was "property held for the production of income." In our judgment it was not so held, and we are wholly unpersuaded by petitioner's arguments to the contrary as well as by its attempted reading of section 212(2) that would dispense with the necessity of satisfying the "held for the production of income" requirement in the case of a trust.

The requirement that the property be "held for the production of income" has been regarded as involving an inquiry into whether there exists a genuine "expectation of profit" on the part of the taxpayer. See *Frank A. Newcombe*, 54 T.C. 1298, 1303; *Samuel Yanow*, 44 T.C. 444, 452, affirmed per curiam 358 F. 2d 743 (C.A. 3); *Eugene H. Walet, Jr.*, 31 T.C. 461, 472-473, affirmed 272 F. 2d 694 (C.A. 5). And the burden in this respect is on the taxpayer. See *International Trading Co. v. Commissioner*, 275 F. 2d 578, 586 (C.A. 7); *Frederick H. Prince Trust*, 35 T.C. 974, 978.

In support of its position that the expenses in question were related to "property held for the production of income," petitioner stresses two matters, first, that Mr. duPont's transfer of $2 million in Almour preferred stock to Nemours, Inc., in 1929 constituted "pre-paid rent" for the use of Nemours by himself and his wife for the remainder of

their lives, and, second, that the trust had gross income of over $13 million in each of the 2 years involved herein, 1966 and 1967. Neither of these points is sound.

We reject completely the argument that the 1929 transfer of the Almour preferred stock to Nemours, Inc., represented "pre-paid rent." It was never characterized as such; it was never reported as "rent"; and no income tax was ever paid by Nemours, Inc., in respect of any such alleged "rent." No amount of repetitive characterization of this item as "pre-paid rent" by petitioner's counsel in their briefs can belatedly transform what was plainly a contribution to the capital of Mr. duPont's wholly owned Nemours, Inc., into "pre-paid rent." No rental income or any other kind of income was reported in the corporation's 1929 return in respect of the receipt of the Almour securities, which were reflected simply in a $2 million increase in "paid-in surplus" on the balance sheet. The fact that this item was reflected in some other manner in later balance sheets hardly changes the situation. The point is that the transfer of these securities to Nemours, Inc., was not intended as "pre-paid rent," and we so find as a fact on the materials before us, bearing in mind that the burden of proof is upon petitioner.

Petitioner's reliance upon the fact that it received income in excess of $13 million during each of the years 1966 and 1967 is of no greater help to it. That income was derived almost entirely from dividends and interest, and no part of the expenses of maintaining Nemours was shown to have any connection, let alone "a reasonable and proximate relation to" (*Trust of Bingham* v. *Commissioner*, 325 U.S. 365, 370) the securities or other sources from which such income was derived. It is not enough that the taxpayer have income; the particular expenses must relate to "property held for the production of income." Cf. *International Trading Co. v. Commissioner*, 275 F. 2d 578 (C.A. 7).

Finally, on this aspect of the case, petitioner makes the argument that since it is a trust and since the expenses were incurred for the management of trust property, i.e., Nemours, they are deductible "whether or not they related directly to property held for the production of income." In this connection it relies upon *Trust of Bingham* v. *Commissioner*, 325 U.S. 365, and several lower court cases. Petitioner's position would thus excise from the statute the requirement of section 212(2) that the expenses must be incurred "for the management, conservation, or maintenance of *property held for the production of income*" (emphasis supplied), and it rests upon a misreading of the *Bingham* case.

*Bingham* similarly involved a testamentary trust, but there was no dispute in the Supreme Court that the property comprising the corpus

of the trust was "held for the production of income." See 325 U.S. at 368. The expenses there involved included certain income tax litigation expenses and legal fees in connection with payment of one of the legacies and final distribution of the trust among the residuary legatees. The question which the Supreme Court addressed was whether the expenses in controversy had "a reasonable and proximate relation to the management of property held for the production of income." 325 U.S. at 370. And it decided that these expenses did have the necessary relationship to such property, even though the expenses themselves had no connection with the production of income, the latter being dealt with in the 1939 Code's equivalent of section 212(1). What was involved in *Bingham* was the 1939 Code's equivalent of section 212(2), which was concerned with "property held for the production of income," and reasonable expenses proximately related to *such* property were deductible, regardless of whether they were productive of income or related to the production of income. Throughout its opinion the Supreme Court repeated the idea that it was dealing with a situation involving property "held for the production of income." See, e.g., 325 U.S. at 372, 373, 374, 376. The critical consideration in this case is that Nemours was *not* held for the production of income. *Bingham* is of no aid to petitioner.

Similarly, petitioner makes misleading use of a quotation from a portion of *Commissioner* v. *Goldberger's Estate*, 213 F. 2d 78, 84 (C.A. 3), referring to *Bingham*, to the effect that "a trust is an entity for producing income * * * and the particular expense in question may be deductible even though it does not directly produce income if it was incurred to manage or conserve the trust fund." What petitioner omits is language which precedes this quotation and which makes clear that what was involved was the allowance of a deduction for an expense of "management of property held for the production of income." Neither *Bingham* nor *Goldberger's Estate* furnishes any basis for the deduction of expenses of management of property which is *not* held for the production of income. See also *Loyd* v. *United States*, 153 F. Supp. 416, 420 (Ct. Cl.).

For like reasons petitioner's reliance on section 1.212–1(i),[14] Income Tax Regs., which provides in part that "Reasonable amounts paid * * * by the fiduciary of [a] * * * trust on account of administration

---

[14] Sec. 1.212–1   Nontrade or nonbusiness expenses.

(i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business, except to the extent that such expenses are allocable to the production or collection of tax-exempt income. But see section 642(g) and the regulations thereunder for disallowance of such deductions to an estate where such items are allowed as a deduction under section 2053 or 2054 in computing the net estate subject to the estate tax.

expenses, * * * which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212," is misplaced. As was stated in *Estate of Mortimer B. Fuller*, 9 T.C. 1069, 1075, affirmed per curiam 171 F. 2d 704 (C.A. 3), certiorari denied 336 U.S. 961, "necessary expenses of administering an estate and of conserving the properties of the estate can not be used as a cloak for expenses which are not for those purposes but are for the quite different purpose of providing [the personal living expenses of some of the trustees]." The expenses herein bear a close resemblance to those involved in *Frederick H. Prince Trust*, 35 T.C. 974, 978, and the deductions therefor were properly disallowed for similar reasons.[15]

In view of our conclusion that none of the expenditures in question are deductible under section 212, we do not reach the Government's alternative contention that a portion of the 1967 expenses were in any event capital in nature and therefore not deductible for that reason.

Petitioner's final contention is that the expenditures in question are deductible under section 642(c)[16] as "income * * * paid or permanently set aside for a [charitable, etc.] purpose." The Government argues that this issue was raised by petitioner for the first time on brief and that it is not properly before us. This procedural matter is not free from doubt, but we think that there is no merit to petitioner's position in any event.

Mrs. duPont was in possession of Nemours during the taxable years 1966 and 1967 and up to the time of her death in September 1970. It did not pass to the charitable foundation until after her death. Certainly, the general expenses of maintaining Nemours in 1966 and 1967 were not amounts that were "paid or permanently set aside" for charitable purposes. They were paid for the current maintenance of the property.

---

[15] The mere fact that deductions for maintenance expenses in respect of Nemours had been mistakenly allowed in earlier years does not preclude correction of that mistake for the years in issue. Cf. *Automobile Club* v. *Commissioner*, 353 U.S. 180, 183-185; *Dixon* v. *United States*, 381 U.S. 68; *Union Equity Cooperative Exchange* v. *Commissioner*, 481 F. 2d 812, 817 (C.A. 10), affirming 58 T.C. 397, certiorari denied 414 U.S. 1028; *George R. Tollefsen*, 52 T.C. 671, 681, affirmed 431 F. 2d 511 (C.A. 2), certiorari denied 401 U.S. 908.

[16] Sec. 642(c), I.R.C. 1954, provided during the years in issue—

SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(c) DEDUCTION FOR AMOUNTS PAID OR PERMANENTLY SET ASIDE FOR A CHARITABLE PURPOSE.—In the case of an estate or trust (other than a trust meeting the specifications of subpart B) there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) *any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c)*, or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. * * * [Emphasis supplied.]

Only in respect of the $114,284.82 portion of the 1967 expenses is there any semblance of an arguable claim for deduction under section 642(c). The Government has contended in another connection that this portion represented capital expenditures, a contention that might operate in petitioner's favor on this issue. However, even if section 642(c) were otherwise applicable, we cannot say on this record that any part of the $114,284.82 was paid or set aside for charitable purposes.

For one thing, as the person in possession of Nemours during 1966 and 1967 Mrs. duPont, and not the foundation, was the immediate beneficiary of these expenditures. Moreover, although the foundation obtained Nemours after Mrs. duPont's death in September 1970, and a hospital for crippled children was built upon 22.5 acres of the grounds, no part of the remaining property appears to have been opened to the general public even up to the time of the trial herein. And not only does the record fail to show that any of the expenditures were incurred in respect of the 22.5 acres, but even if some portion of the $114,284.82 were otherwise deductible in respect of the remainder of Nemours there is no showing as to how much, if any, of the remaining useful lives of the various components of that item would actually be devoted to charitable purposes within the terms of section 642(c). We do not mean to suggest that expenditures of the type involved herein might generally qualify under section 642(c), but on the record before us we conclude there is complete failure of proof that the particular expenditures can in any event come within its scope. This case is wholly unlike *Estate of Edward T. Bedford*, 39 B.T.A. 1039, relied upon by petitioner, where the property involved was already being used for a public purpose at the time of the expenditures in question and where it was found that the primary purpose of the expenditures was in connection with that public or charitable use.

*Decision will be entered for the respondent.*