ALFRED I. duPONT TESTAMENTA-
RY TRUST, et al., Petitioners-Appel-
lants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 74–2807.

United States Court of Appeals,
Fifth Circuit.

June 12, 1975.

**918**

Herbert R. Berk, Patrick J. Murphy, New York City, for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown, Atty. Tax Div., Gilbert E. Andrews, Acting Chief, Appellate Sec., U. S. Dept. of Justice, Meade Whitaker, Chief Counsel, Edward D. Robertson, Elmer J. Kelsey, Dennis M. Donohue, Attys., I. R. S., Washington, D. C., for respondent-appellee.

Before BROWN, Chief Judge and GODBOLD and CLARK, Circuit Judges:

CLARK, Circuit Judge:

The Commissioner disallowed deductions claimed by the taxpayer, a testamentary trust created under the will of Alfred I. duPont, in the tax years 1966 and 1967 for expenses of maintaining an estate owned by the taxpayer but which was then being used as Mrs. duPont's home. The expense deductions were claimed to be ordinary and necessary expenses under Int.Rev.Code of 1954 § 212 because the estate was rental property or alternatively because the estate was part of an income producing entity comprised of the estate and securities owned by taxpayer. The Tax Court upheld the Commissioner. Alfred I. duPont Testamentary Trust, 62 T.C. 36 (1974). On this appeal, taxpayer urges error in the Tax Court's Section 212 reasoning and also urges alternate theories of deductibility specifically related to operating trusts. We affirm in part and remand.

About 1910 Alfred I. duPont built a mansion on a 300 acre tract in Brandywine Hundred, New Castle County, Delaware which he named "Nemours." Mr. duPont lived at Nemours with his wife, Jessie Ball duPont, from their marriage in 1921 until 1926. After 1926 they resided principally in Florida, but spent an average of two months a year at Nemours. By the time of his death in 1935 Nemours included formal gardens, manmade lakes, a greenhouse, large monuments built in honor of Mr. duPont's ancestors, an extensive system of roadways, bridges, walkways, stables, and various other buildings.

In 1925 Mr. duPont organized Nemours, Inc. (the corporation) and transferred to it full title to the mansion house and grounds in exchange for all of the corporation's stock. Subsequently Mr. and Mrs. duPont leased Nemours for the term of their joint lives plus the life of the survivor. The agreed rental was one dollar a year. The duPonts were required by the lease agreement to pay all taxes and the expense of the upkeep of the buildings and grounds. In January 1929 Mr. duPont transferred to the corporation 20,000 shares of preferred stock of Almour Securities, Inc. valued at 2,000,000 dollars. In exchange for this transfer, the lease agreement was amended to provide that the corporation would pay taxes and expenses of upkeep.

Beginning in 1929, the corporation listed the value of the Almour stock on most of its income tax returns as "paid in surplus" or "surplus." In 1932 and again in 1937 (the year the corporation was dissolved) respectively, the stock value was reflected in "undivided profits" and in "earned surplus and undivided profits." The Almour stock represented the largest asset value of the corporation. Its other assets, the land and im-

provements comprising Nemours, were valued at 572,215 dollars in 1929 and at over 1,000,000 dollars in 1936 and 1937. The corporation never reported any rental income from the lands and buildings, but did report dividend income of about 100,000 dollars per year from the Almour stock.

The corporation claimed deductions each year from 1929–37 for the expenses of maintaining Nemours. Most of the deductions were challenged by the government as not incurred in connection with property held for the production of income. Pursuant to an agreement between the corporation and the Revenue Service, no deduction was allowed for most of the expenses claimed. Since the dividend income reported in each of the years prior to 1935 was offset by the 100 percent deduction allowed for dividends paid by domestic corporations, the real property maintenance deduction allowed in those years had no tax consequence. The business of the corporation was shown in its tax returns as "Owners and Operators of Real Estate," until Mr. duPont's death at which time its business was designated as "Holding Real Estate for Charitable Foundation."

Mr. duPont died in 1935 survived by his wife. His will vested title to the stock of the corporation in his executors who were instructed by the will to set up a trust to continue the maintenance of the grounds. The stock of the corporation was to comprise the corpus of this testamentary trust along with large blocks of other securities. Mrs. duPont was a trustee and the principal income beneficiary for her life. The trust was to pay her 200,000 dollars a year plus any income remaining after the payment of specified annuities. The trustees were directed to organize a charitable foundation at the death of Mrs. duPont and to transfer to it the trust assets. This foundation, to be designated the Nemours Foundation, was to be operated in memory of duPont ancestors for the treatment of crippled children or old people. The mansion house was to be

maintained in its then state and opened to the public. The trust became operative in 1937.

In valuing the corporation's stock for estate tax purposes, the executors subtracted a reserve fund representing the anticipated maintenance cost of Nemours for the projected life expectancy of Mrs. duPont (19½ years). Subsequent income tax deductions by Mr. duPont's estate for maintenance of Nemours were challenged by the Revenue Service as duplicating the estate tax deductions. An agreement was reached between the parties whereby a portion of each year's maintenance expense would be deducted from the reserve. When the reserve was depleted in the early 1950's, the trust began to deduct the full amount of the expenses incurred in maintaining Nemours. These deductions were not challenged.

From 1962 until her death in 1970, Mrs. duPont resided full time at Nemours. The mansion house was not then and has not yet been opened to the public. A hospital for crippled children, built sometime after Mr. duPont's death, occupies 22 acres of the Nemours estate grounds.

During 1966 and 1967, the tax years in question, the gross income of the trust was 13,000,000 dollars. Of this sum 11,000,000 dollars was distributed to Mrs. duPont. The trust spent 255,753 dollars in 1966 and 274,451 dollars in 1967 for general maintenance of the Nemours estate. An additional 114,284 dollars was expended during 1967 for repaving existing paved roadways and walkways; paving existing unpaved roadways; rehabilitating various structures such as a classical temple, ornamental balustrades, steps, fountains, terraces, flagstones, and urns; and purchasing a jeep and a dump truck. The Commissioner disallowed all of these deductions. The reasons given were that (1) the property was not held for the production of income; (2) the expenditures did not qualify as administration expenses; and (3) the expenditures did not qualify as charitable deductions. Alternatively he contended that

the 114,284 dollar outlay represented capital expenditures which were not allowable as deductions.[1]

### Prepaid Rent

■ The taxpayer maintains that the deductions were proper under Int.Rev. Code of 1954 § 212(1),[2] which provides a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year . . . for the production or collection of income . . . ."

Taxpayer contends that under the 1929 amendment to the 1925 lease to the duPonts, the transfer of the 2,000,000 dollars worth of Almour securities constituted prepaid rent, and therefore that, insofar as the corporation and the trust were concerned, Nemours was income producing rental property.

The attempt to characterize the transfer of the Almour securities as pre-paid rent was correctly rejected by the Tax Court both as a matter of form and of substance. No part of these assets or the dividends therefrom were ever reported as taxable rental income on the corporation's income tax returns. The 1929 agreement clearly establishes that Mr. duPont conveyed the Almour securities to the corporation, which he continuously owned and controlled until the time of his death, to enable it to pay taxes and maintenance expenses he had previously borne personally. The only payment specified as rent in the initial agreement and in the 1929 amendment was a token 1 dollar a year. The record contains no other indication that the conveyance of Almour stock was intended to contitute prepaid rent. Neither the documentation nor the conduct of the parties indicates that the securities were transferred for any purpose other than to relieve the duPonts of the day-to-day burdens of administering the estate.

No attempt was made to show what the anticipated expenses of maintaining the estate might be as compared to the income produced by or the total value of the Almour securities. In short, the taxpayer trust simply failed to carry its burden of proving that Nemours was rental property in these tax years. This failure of affirmative proof controls our decision here.[3] *See* Mayrath v. Commissioner of Internal Revenue, 357 F.2d 209 (5th Cir. 1966); and International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578 (7th Cir. 1960).

### Property Held for the Production of Income

■ Alternatively, the taxpayer urges the upkeep and maintenance expense was deductible under section 212(2) which allows a deduction for "all the ordinary and necessary expenses paid or incurred . . . for the management, conservation or maintenance of property held for the production of income . . . ."

To support this argument before us, taxpayer relies principally on Bingham's Trust v. Commissioner of Internal Revenue, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945) in which the Court held that legal fees incurred to contest an income tax deficiency were deductible since they were funds expended for the conservation of trust property which was held for the production of income. The taxpayer asserts that *Bingham's* rationale covers the expenses incurred in maintaining Nemours even though Nemours was not strictly property held for the production of income.

---

1. Int.Rev.Code of 1954, § 263 provides:
   (a) General rule.—No deduction shall be allowed for—
   (1) Any amount paid out for new buildings or for permanent improvements or betterments to increase the value of any property or estate.

   .    .    .    .    .

   (2) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

2. Hereinafter, all "sections" refer to Int.Rev. Code of 1954.

3. We do not assign any substantial weight to the fact that the consideration for a lease agreement was reported as paid in surplus. *Cf.* Helvering v. Schine Chain Theatres, Inc., 121 F.2d 948 (2d Cir. 1941).

The thrust of the argument is that the taxpayer trust, an entity for the production of income comparable to a business enterprise, could deduct these expenses as maintenance expenses even though Nemours did not directly produce income, because payment of the maintenance and upkeep expense was a fundamental duty of the trustees in the administration of the trust. This interpretation glosses over the fact that a threshold determination in *Bingham* was that the property which the expenditure protected was held for the production of income.[4] Although it was the duty of the trustees to maintain Nemours, Nemours was not property held for the production of income. *See* Estate of Mortimer B. Fuller, 9 T.C. 1069 (1947), aff'd per curiam 171 F.2d 704 (3d Cir. 1948). In the case at bar, the question which concerned the Court in *Bingham* —whether the expense incurred was connected with, or proximately resulted from, the management of property held for production of income—is never reached.

■ Despite the lease agreements between the wholly-owned corporation and the duPonts and the controlling terms of Mr. duPont's testamentary trust, Nemours remained the duPonts' personal residence. It was the antithesis of income producing property. The expenses incurred in the maintenance and upkeep of this private residence never were deductible expenses relating to property held for the present or future production of income.[5] *See* Eugene H. Walet, Jr., 31 T.C. 461 (1958), aff'd per curiam 272 F.2d 694 (5th Cir. 1959).

### Alternative Trust Deductions

■ As an alternative to its section 212 contentions, the taxpayer seeks deductibility under section 642(c) or section 170(a)[6]. It asserts that if the expenses are not deductible as expenses paid for the benefit of Mrs. duPont, the life beneficiary, then they were incurred for the benefit of the remainderman, the Nemours Foundation, a charitable organization. Since the Nemours Foundation was a validly existing organization in the years in question, section 170(a) would provide a deduction for amounts distributed currently for the benefit of a charitable organization.

Section 642(c) speaks of amounts to be "paid or permanently" set aside during the current year pursuant to the terms of the governing instrument for a charitable purpose. Mrs. duPont was in possession of Nemours for the years in question, and the expenses were for current maintenance. The Nemours Foundation did not receive Nemours until 1970. It is true that 22 acres of the grounds were being used as a children's hospital, but this fact is of no moment since the expenses sought to be deducted were not in any way connected with the

---

4. *See* 325 U.S. at 374, 65 S.Ct. 1232.

26 C.F.R. § 1.212–1(i), relied on by the taxpayer, reflects the holding in *Bingham* and for the same reasons is not helpful.

The taxpayer's reliance on Commissioner of Internal Revenue v. Goldberger's Estate, 213 F.2d 78 (3d Cir. 1954) is similarly misplaced, since all of the property in trust in that case was likewise income producing property.

5. We do not rule the trust to be invalid. *See* Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440 (5th Cir. 1965). No sham, fraud, purpose of tax avoidance or other lack of bona fides was present. The trust entity had a real and viable purpose: to hold the property for the benefit of the spouse of testator during her lifetime and for the ultimate disposition to a charitable foundation at her death. This is an entirely proper purpose for

the creation and funding of a trust. The problem is that Nemours did not qualify as property held for production of income.

6. Section 642(c) provides:

In the case of an estate or trust . . . there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes . . . ..

Section 170(a) provides for deductions of charitable contributions.

hospital. Further, the trust instrument itself did not provide that any amounts be expended for the foundation until after Mrs. duPont's death. The charitable purpose was too remote to cause these expenses for present maintenance to be deductible as paid or permanently set aside during the taxable years for charitable purposes.

The taxpayer makes a second *arguendo* assertion, if the deductions are denied under section 212, that the Tax Court erred in not treating them as deductions allowable under section 651 or 661 because they were amounts expended by a trust for its beneficiary. Section 651 permits a trust to deduct current income required by the terms of the trust to be distributed currently. Its companion, section 652, provides that such required amount shall be included in the gross income of the beneficiary. Section 661 permits a deduction by a trust when accumulated income is required to be distributed, paid or credited in the current tax year, such as the year in which a trust is terminated. Its companion, section 662, requires such distribution, payment or credit to be reported as a part of the gross income of the beneficiary. The Tax Court did not mention this contention in its opinion.

The obligation to maintain Nemours was created by the 1929 amendment to the lease agreement. It was, in that year, a commitment by a wholly owned corporation to pay personal living expenses [7] of Mr. and Mrs. duPont which he funded by the conveyance of Almour stock. It primarily retained this same personal expense character in 1966 and 1967 as to Mrs. duPont, a trustee as well as the principal beneficiary of the trust. The record before us does not reveal whether Mrs. duPont reported any part of these payments as income to her in either tax year. She would have been required to do this by sections 652 and 662, if the payments had qualified for deductions by the trust as funds distributed to her pursuant to the trust agreement under section 651 or 661. *Cf.* Commissioner of Internal Revenue v. Plant, 76 F.2d 8 (2d Cir. 1935).

■ We are unsure of the basis for the Commissioner's action in recognizing for estate tax purposes the creation and amortization of a maintenance reserve fund for Nemours and his failure to challenge the trust's annual maintenance deductions from the time this reserve had been depleted until the 1966 and 1967 tax years. Nor do we know how these amounts were treated by Mrs. duPont in connection with her personal income tax returns for these tax years. We decline to determine the right of the trust to deduct these challenged amounts under section 651 or 661 until the matter has been squarely presented to and decided by the Tax Court. Except as expressly set out herein, we intimate no views on this issue.

### Conclusion

■ Deductions are a matter of legislative grace. *See* Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). The deductions claimed by the taxpayer here must fit into a statutory category of deductibility, else the trustees must carry out their fiduciary duty at the expense of the trust, rather than the public fisc.

We agree with the Tax Court that the trustees were entitled to no deduction for the expenses incurred in the maintenance and upkeep of Nemours during Mrs. duPont's life under sections 212, 642(c) or 170(a).[8] We reach no conclusion as to deductibility under section 651 or 661, nor as to the collateral effect the allowance of such deductions would have had on Mrs. duPont's tax liability under section 652 or 662, nor whether limita-

---

7. Section 262 prohibits deductions for personal living or family expenses.

8. The taxpayer also asserts that the expenditures were not capital in nature. Having decided that the expenses are not deductible as ordinary and necessary expenses related to property held for the production of income, their capital or non-capital nature does not matter.

tions would bar the present assessment or allocation of such amounts to her personally. The cause is remanded for such further proceedings as the Tax Court may determine are necessary to enable it to consider and decide these issues.

Affirmed in part and remanded.