*Decision will be entered under Rule 155.*

ALFRED I. DUPONT TESTAMENTARY TRUST, THE FLORIDA NATIONAL BANK OF JACKSONVILLE, EDWARD BALL, WILLIAM B. MILLS, J. C. BELIN, T.S. COLDEWEY, W.L. THORNTON, AND ALFRED D. DENT, TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 330-72.    Filed July 26, 1976.

*Herbert R. Berk* and *Patrick J. Murphy,* for the petitioner.
*Thomas F. Donahue,* for the respondent.

### OPINION

RAUM, *Judge:* This case is now before us on remand from the Fifth Circuit Court of Appeals. Our original opinion, 62 T.C. 36, was accompanied by detailed findings of fact which are incorporated herein by this reference. We set forth below only those facts necessary to an understanding of the issue which we have been directed by the Court of Appeals to resolve.

In 1925, Alfred I. duPont organized Nemours, Inc., a corporation. In exchange for all of the corporation's stock he transferred to it full title to his elaborate Delaware residential estate known as "Nemours" (consisting of a mansion and some 300 acres of surrounding grounds on which were located various other buildings and structures). Mr. duPont and his wife, Jessie Ball duPont, thereafter leased Nemours from the corporation, for the term of their joint lives plus the life of the survivor, for an annual rental of $1. Subsequently, Mr. duPont transferred securities valued at $2 million to the corporation in return for its further agreement to pay all taxes assessed against Nemours as

well as the expenses of maintaining the grounds (including the mansion's exterior). The expenses incurred inside the mansion house and the salaries of the duPonts' personal employees remained the responsibility of the lessees.

Mr. duPont and his wife resided at Nemours until 1926 when they acquired a second home, Epping Forest, in Jacksonville, Fla., which became their principal residence.[1] They used Nemours about 2 months a year until 1935 when Mr. duPont died; thereafter Mrs. duPont continued to use it also about 2 months a year until 1962. In that latter year, while in Delaware, Mrs. duPont broke a leg and remained at Nemours until her death in 1970 when she was 86 years old. As the result of a second accident in 1966, she was confined almost entirely to a wheelchair. She was an invalid, and made very little use of the elaborate facilities at Nemours, although they were available to her.

Mr. duPont's will made certain specific bequests (including the contents of the Nemours mansion to his wife) and then established a testamentary trust, the petitioner herein, to which he gave the remainder of his estate, which included all of the stock of Nemours, Inc. The trustees were directed to pay out of income the first $200,000 a year to Mrs. duPont, then to pay certain enumerated annuities, after which any remaining income was to be paid to Mrs. duPont. (During each of the tax years the total income of the trust was in excess of $13 million and the amount payable to Mrs. duPont was in excess of $11 million.) The will further provided that upon Mrs. duPont's death the trustees were to cause to be organized a charitable corporation to be known as "The Nemours Foundation" in honor of certain ancestors of Mr. duPont and to transfer to it the Nemours property.

Upon Mr. duPont's death, in 1935, title to the stock of Nemours, Inc., passed, according to the directions of his will, to the executors of his estate. The stock was held by Mr. duPont's executors from the time of his death in 1935 until 1937, when they liquidated the corporation and transferred its assets (consisting of Nemours and certain securities) to the testamentary trust, subject to the continuing obligation to maintain the grounds and pay the taxes during Mrs. duPont's life

---

[1] Title to Epping Forest was vested in an estate by the entireties in Alfred and Jessie duPont so upon Alfred's death, it would by operation of law, pass to Mrs. duPont.

tenancy. Prior to its liquidation the corporation had paid the maintenance expenses and taxes; thereafter the charges of both categories were paid by the testamentary trustees.

As indicated above, Mrs. duPont resided at Nemours from 1962 until her death in 1970. The trust spent $255,753 in 1966 and $274,451 in 1967 for general maintenance of the Nemours estate; it expended an additional $114,284 during 1967 for improvements thereon, including the paving of certain roadways, the restoration of ornamental stonework, and the purchase of certain vehicles for use in connection with the estate. On the Federal fiduciary income tax returns for 1966 and 1967 the trustees claimed deductions in respect of these amounts. The Commissioner disallowed these deductions in their entirety.

In our earlier opinion we held that the trust could not deduct, under section 212, the expenses of maintaining Nemours either as expenses proximately related to property held for the production of income or as expenses incurred in the management of trust property. And we held further that the trust was not entitled to a charitable deduction under section 642(c) in respect of these expenditures.

The Court of Appeals affirmed our resolution of both of these issues. 514 F.2d 917. However, it also considered petitioner's additional contention (raised for the first time in the appellate proceeding) that the trust should be allowed to deduct these amounts under section 651 or 661, which define the tax consequences to a trust of certain transactions between the trust and its beneficiaries. Noting a possible relationship between the resolution of this question and the tax liability of Mrs. duPont, it stated (514 F.2d at 922): "The record before us does not reveal whether Mrs. duPont reported any part of these payments as income to her in either tax year. She would have been required to do this by sections 652 and 662, if the payments had qualified for deductions by the trust as funds distributed to her pursuant to the trust agreement under section 651 or 661." Moreover, the Court of Appeals indicated that it was "unsure of the basis for the Commissioner's action in recognizing for estate tax purposes the creation and amortization of a maintenance reserve fund for Nemours and his failure to challenge the trust's annual maintenance deductions from the time this reserve had been

depleted until the 1966 and 1967 tax years."[2] 514 F.2d at 922. And in remanding the case for consideration of the newly claimed deductions under section 651 or 661, the Court of Appeals also raised the question "whether limitations would bar the present assessment or allocation of [the disallowed] amounts to [Mrs. duPont] personally." 514 F.2d at 922-923.

Pursuant to the remand, a hearing was held by this Court on March 3, 1976. No additional evidence was presented apart from a "Second Supplemental Stipulation of Facts," to which petitioner objected as irrelevant, and which established merely that Mrs. duPont had not included as income on her 1966 and 1967 returns any portion of the amounts paid by the trust for maintenance and improvements of Nemours which are the subject of the present controversy. We are inclined to agree with petitioner that Mrs. duPont's treatment of these amounts on her 1966 and 1967 returns is irrelevant, but we received the stipulation because the Court of Appeals appeared to think that the record was incomplete without evidence as to that matter.

Although the parties have not presented us with any evidence or arguments as to "whether limitations would bar the present assessment or allocation of such amounts to her personally" (514 F.2d at 922-923), it is quite clear that the usual 3-year period of limitations (sec. 6501(a), I.R.C. 1954) has long since expired. However, we cannot determine, from the record before us, whether Mrs. duPont's tax liability for these years is currently subject to adjustment either, for example, because the normal 3-year period has been extended by agreement (sec. 6501(c)(4)), or because the highly complex mitigation provisions of sections 1311-1315 might lift the bar of the period of limitations against her or her estate in the event that the petitioners should prevail in this litigation.[3] In the circumstances, we express no opinion on the matter.

Also, the parties have not presented any additional materials on the remand relating to the so-called maintenance reserve or the Commissioner's failure to challenge the deductions for the years preceding 1966 after the reserve had been depleted. We

[2] The so-called maintenance reserve fund and the Commissioner's action referred to are described in the findings which we made when the case was previously before us. 62 T.C. at 42.

[3] This issue is further complicated by Mrs. duPont's death in 1970. Additional problems would be presented in asserting liability against her estate or against various transferees of the assets thereof in the event her estate has already been distributed.

have no further enlightenment on these matters than was available to the Court of Appeals when the case was before it, and, of course, to the extent that the record is deficient in this or any other respect, petitioner must bear the consequences since the burden of proof was upon it. However, in our judgment, the manner of treating these deductions in earlier years is wholly irrelevant, since it has been firmly established that the Commissioner's erroneous treatment of an item in earlier years or his failure to challenge a taxpayer's erroneous treatment does not preclude an examination of the correctness of the treatment of such item for the tax years in issue. *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183; *Union Equity Cooperative Exchange v. Commissioner,* 481 F.2d 812, 817 (10th Cir.); *Caldwell v. Commissioner,* 202 F.2d 112, 115 (2d Cir.); "The mere fact that [the taxpayer] may have obtained a windfall in [an earlier year] does not entitle [it] to like treatment in [a later year]." *George R. Tollefsen,* 52 T.C. 671, 681, affirmed 431 F.2d 511 (2d Cir.), certiorari denied 401 U.S. 908. See also *Dixon v. United States,* 381 U.S. 68, 72-73; *Fidelity Commercial Co.,* 55 T.C. 483, 490, affirmed (4th Cir., 28 AFTR 2d 5751, 71-2 USTC par. 9667); *Lozoff v. United States,* 266 F.Supp. 966, 971 (E.D. Wis.), affirmed per curiam 392 F.2d 875 (7th Cir.); *Southern Hardwood Traffic Association v. United States,* 283 F.Supp. 1013 (W.D. Tenn.), affirmed per curiam 411 F.2d 563 (6th Cir.); *Chester Farrara,* 44 T.C. 189, 191. The question still remains whether section 651 or 661, as applied to the facts of this case for the years 1966 and 1967, as a matter of law entitles petitioner to the deductions which it claims at this time. We turn therefore to that question now, and hold that such deductions are not available to petitioner.

Sections 661 and 662, I.R.C. 1954, together apply the conduit principle as the basic pattern of income taxation of "complex" trusts.[4] Apart from these provisions, a trust computes its taxable

---

[4] Likewise secs. 651 and 652 apply the conduit principle to the income taxation of "simple" trusts. In general, a simple trust is one that is required to distribute all of its income currently, whose terms do not provide for any amounts to be paid or permanently set aside for charitable purposes, and which does not make any distribution other than of current income. Sec. 1.651(a)-1, Income Tax Regs. All other trusts and all decedents' estates are treated as complex trusts. Sec. 1.661(a)-1, Income Tax Regs. It appears from petitioner's Federal fiduciary income tax returns that in both 1966 and 1967 it realized capital gains, allocable to corpus, in respect of which it claimed a charitable deduction under sec. 642(c). Therefore, although the parties have expressed considerable uncertainty on this matter, we shall treat petitioner as a complex trust whose tax liability is governed,

income and pays the tax thereon according to rules generally similar to those applicable to individuals. Secs. 641-643, I.R.C. 1954. However, because of sections 661 and 662, a beneficiary—and not the trust—is taxed, to the extent of the trust's "distributable net income" as defined in section 643(a), on any amounts which are actually distributed to, or which by the trust instrument are required to be distributed to, that beneficiary. Section 661 allows the trust a deduction for these amounts while section 662 requires their inclusion in the gross income of the beneficiary. Relevant portions of these sections appear in the margin.[5] We hold that the amounts paid by the trustees for the maintenance and improvement of Nemours may not be deducted as distributions to Mrs. duPont as the residuary beneficiary of the testamentary trust.

(1) In the first place, it must be remembered that the obligation to make these expenditures had for many years been that of Nemours, Inc., the corporation to which Mr. duPont had transferred Nemours in 1925. That obligation arose when in 1929 he transferred $2 million of securities to the corporation in

inter alia, by secs. 661 and 662. However, insofar as we can determine, our resolution of the central issue before us would be unchanged, if we applied, instead, secs. 651 and 652. Similar underlying principles guide the taxation of transactions between trusts and their beneficiaries, whichever pair of Code provisions by their terms applies.

[5] Sec. 661 provides in part:

SEC. 661. DEDUCTION FOR ESTATES AND TRUSTS ACCUMULATING INCOME OR DISTRIBUTING CORPUS.

(a) DEDUCTION.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

Sec. 662 provides in part:

SEC. 662. INCLUSION OF AMOUNTS IN GROSS INCOME OF BENEFICIARIES OF ESTATES AND TRUSTS ACCUMULATING INCOME OR DISTRIBUTING CORPUS.

(a) INCLUSION.—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

(1) AMOUNTS REQUIRED TO BE DISTRIBUTED CURRENTLY.—The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. * * *

(2) OTHER AMOUNTS DISTRIBUTED.—All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. * * *

a transaction that we previously regarded as in effect a contribution to capital. When Mr. duPont died, his stock in Nemours, Inc., passed to his executors, who dissolved the corporation and thereby received its assets while they at the same time assumed its obligations and liabilities. Thereafter, when the executors transferred Nemours (which they had received upon liquidation of the corporation) to the testamentary trust, the trust, petitioner herein, took the property subject to the same obligations and liabilities formerly incurred by the corporation and subsequently assumed by the executors. Of those obligations and liabilities the one which concerns us here was the duty to maintain Nemours throughout the remainder of Mrs. duPont's life.

Accordingly, even if the payments here in issue be regarded as having been made primarily for Mrs. duPont's benefit, she received the benefit thereof *not* as a beneficiary of the testamentary trust but rather as a result of contractual arrangements with Nemours, Inc., made long prior to Mr. duPont's death. The burden of these contractual arrangements (i.e., the duty to maintain Nemours) passed to each successive owner of Nemours: from the corporation as the original obligor, first to the executors when the corporation was dissolved, and then to the testamentary trustees when Nemours was transferred to the testamentary trust.

To be deductible by the trust under section 661 (or section 651), a distribution must be made to a beneficiary in his status as a beneficiary, not as a creditor or in some other capacity. *Thomas Lonergan Trust,* 6 T.C. 715, 718; Rev. Rul. 68-48, 1968-1 C.B. 301, 303; cf. *Mott v. United States,* 462 F.2d 512, 517-518 (Ct. Cl.), certiorari denied 409 U.S. 1108. For this reason alone, petitioner is not entitled to prevail. As explained in detail above, Mrs. duPont's rights to the maintenance of Nemours depended not upon her status as the beneficiary of a testamentary trust, but rather upon her status as a lessee whose tenancy was created and defined by a 1925 lease agreement and a 1929 amendment thereto. To the extent that she received benefits from the trustees' expenditures, the benefits had their ultimate source in these contractual arrangements.[6] Thus, such payments cannot be

---

[6] The conclusion that Mrs. duPont's rights stemmed from these contractual obligations is in no way inconsistent with our previous determination that the expenses incurred by the petitioner were not deductible under sec. 212. That determination rested on our view

regarded as distributions to a beneficiary, deductible by the trustees and taxable to the beneficiary under sections 661 and 662, or comparable provisions of the revenue laws.

(2) Relying upon *Commissioner v. Plant,* 76 F.2d 8 (2d Cir.), affirming 30 B.T.A. 133, the Government urges another, and perhaps less clear, reason for the inapplicability of sections 661 and 662. Under the theory of *Plant,* the maintenance and improvement expenditures in the unusual circumstances before us would not be regarded as distributions to Mrs. duPont within the meaning of sections 661 and 662.

To be sure, expenditures may be deductible as distributions to a beneficiary, even though the amounts are not paid directly to the beneficiary. *Bergan v. Commissioner,* 80 F.2d 89, 91 (2d Cir.); *Rodman Wanamaker Trust,* 11 T.C. 365, 373-374, affirmed per curiam on another issue sub nom. *Commissioner v. Trustees Common Stock John Wanamaker, Philadelphia,* 178 F.2d 10 (3d Cir.); cf. *Chandler v. Commissioner,* 119 F.2d 623, 628 (3d Cir.). But *Plant* raises a serious question whether payments of the character here involved may be regarded within provisions like section 661 as having been made for the benefit of the beneficiary. A detailed examination of the *Plant* case is required for an understanding of this point.

The decedent in *Plant* created a residuary testamentary trust to pay over the net income in specified shares to his widow, his son Henry, and his adopted son Philip during their respective lives. In addition he made further provision for Henry, directing his trustees to continue to maintain his elaborate estate [7] at Eastern Point, Conn., so long as Henry "may wish to occupy the same as a permanent or summer residence and to charge the expense of such maintenance proportionately against the income of the trusts hereby created for the benefit of my wife and sons, before ascertaining the net income from such trusts." 76 F.2d at 9. During 1924 and 1925 the trustees expended (exclusive of taxes) $14,754.47 and $37,221.98, respectively, in the mainten-

that the lease and its amendment were not profit-seeking transactions. And this view was affirmed by the Court of Appeals. 514 F.2d at 920-921. However, notwithstanding the fact that the leasing arrangement was not a transaction entered into for profit, it did create bona fide rights and obligations between the lessees and the lessors. It was because of these obligations that the trust was required to make the payments here in controversy.

[7] See description of the Plant estate in *Hayward v. Hayward,* 95 Conn. 122, 126-127, 111 A. 53, 54.

ance of the Eastern Point residence, and charged the amounts proportionately against the income of the "three trusts" in the residuary estate. The trustees treated the amounts as undistributable income, and paid income taxes thereon. The Commissioner determined that the trustees' expenditures constituted taxable income to Henry. At issue was the application of section 219(b)(2) of the Revenue Act of 1924, which in its basic operation was comparable to sections 661 and 662 of the Code to the extent of the present problem. The court, in an opinion by Judge Augustus N. Hand, addressed the question whether the income used in maintaining the property was "distributable income" within the meaning of section 219(b)(2). It held that (76 F.2d at 9):

In spite of the fact that the taxpayer received some benefit from the expenditures at Eastern Point which he might have avoided by abandoning his right to occupy the premises, we do not regard the income thus expended as "distributed" to him as that word is used in the Revenue Act.

The instant case, with its unusual facts, is comparable. From 1926 to 1962 Nemours was not Mrs. duPont's principal residence, although she did spend about 2 months a year there. As the result of an accident in 1962 while in Delaware, she remained at Nemours for the rest of her life. During the tax years she was an invalid, and the record shows that she made but scant use of its elaborate facilities. And, insofar as the record reveals, none of the expenses here in controversy were incurred in connection with the inside of the mansion house or with Mrs. duPont's personal employees.

In our earlier opinion we made reference by the way of dictum to the fact that, notwithstanding Mrs. duPont's failure to take advantage of all that Nemours offered, the expenditures in question could be considered as her nondeductible (sec. 262) personal living expenses. 62 T.C. at 46. In this connection there is troublesome language in *Plant* to the effect that the expenditures there "were not applied to the use of the taxpayer [Henry], but employed in maintaining a capital asset of the trust estate." 76 F.2d at 9-10.

But despite any distinctions apparently raised by the language of the two opinions, the facts of the two cases are virtually indistinguishable. If anything, the expenditures in *Plant* were, according to the terms of the will, somewhat more directly connected to Henry's use of the Eastern Point property than were

the expenditures here in controversy connected to Mrs. duPont's occupancy of Nemours. See *Hayward v. Hayward,* 95 Conn. 122, 111 A. 53. In both cases, the person who had the right to take full advantage of the property for life could have avoided the enjoyment of the expenditures in whole or in part by abandoning the right to occupy the premises or by utilizing them only to a limited extent. And in the present case, no less than in *Plant,* the expenditures could be regarded as "employed in maintaining a capital asset of the trust estate," for the record herein also shows that Mr. duPont had been concerned about maintaining Nemours as an everlasting memorial to his ancestors as well as a place where his widow could pass her remaining years. The parallel between the two cases is striking, apart from possible conceptual difficulties that might arise from some language in the *Plant* opinion. We think that the cases are in fact so close that if *Plant* is regarded as good law it must govern. However, although *Plant* is an old case, it has only rarely been cited over the years (cf. *Estate of Mortimer B. Fuller,* 9 T.C. 1069, 1073, affirmed per curiam 171 F.2d 704 (3d Cir.), certiorari denied 336 U.S. 961, and we do not feel completely comfortable with that decision. In any event, we need not rest our result here on *Plant,* since, as has been spelled out above (pp. 766-768), there is an entirely independent basis for the conclusion that we reach.

*Decision will be entered for the respondent.*