FIDELITY COMMERCIAL COMPANY, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4813–68.    Filed December 14, 1970.

*P. A. Agelasto, Jr.*, for the petitioner.
*Robert E. Lee*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $47,476.65 in petitioner's income tax for the taxable year 1965.

As petitioner has made certain concessions, the sole issue we must decide is whether petitioner made at any time during 1965 excessive loans to its majority stockholder so as to fail to meet the section 542(c)(6)(D)[1] requirement for exception to the definition of personal holding company.

---

[1] Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954.

Some of the facts have been stipulated and are so found. The stipulation and the exhibits appended thereto are incorporated herein by this reference.

Petitioner is a Virginia corporation whose principal place of business at the time of the filing of the petition herein was Norfolk, Va. Petitioner owned all of the stock of Securities Equity Corp. with which it filed a consolidated income tax return for 1965 with the district director of internal revenue at Richmond, Va.

Prior to July 1, 1965, petitioner's president, Ralph G. Cohen (hereinafter referred to as Cohen), owned approximately 63 percent of petitioner's capital stock while David Nelson owned the remaining 37 percent. On July 1, 1965, petitioner redeemed all of David Nelson's stock. Mortgage Insurance & Finance Co. (hereinafter referred to as Mortgage) is a sole proprietorship owned by Cohen. J & R Investors (hereinafter referred to as J & R) is a partnership in which Cohen had a 50-percent interest.

During the year in issue petitioner conducted business as a lending and finance company, and its income consisted of dividends in the sum of $718.85, interest in the sum of $347,966.36, and income from late charges in the sum of $17,235.39.

Cohen, Mortgage, and J & R made the following withdrawals [2] from and repayments to petitioner:

### WITHDRAWALS AND (REPAYMENTS)

| Date | Cohen | Mortgage | J & R | Balance |
|---|---|---|---|---|
| 1/1/65 | $9,000 | | | $9,000 |
| 1/10/65 | 500 | | | 9,500 |
| 4/6/65 | (1,000) | | | 8,500 |
| 4/7/65 | (500) | | | 8,000 |
| 6/14/65 | | | $17,000 | 25,000 |
| 6/21/65 | | (1,000) | (17,000) | 7,000 |
| 7/1/65 | | | 20,000 | 27,000 |
| 7/6/65 | (7,000) | | | 20,000 |
| 7/19/65 | | $25,000 | | 45,000 |
| 7/29/65 | | | (20,000) | 25,000 |
| 8/2/65 | | 20,000 | | 45,000 |
| 8/11/65 | | (15,000) | | 30,000 |
| 8/17/65 | | (30,000) | | 0 |
| 9/3/65 | | 45,500 | | 45,500 |
| 9/28/65 | | (33,000) | | 12,500 |
| 11/5/65 | 1,500 | | | 14,000 |
| 11/8/65 | | (1,500) | | 12,500 |
| 12/8/65 | | (11,000) | | 1,500 |
| 12/13/65 | 1,000 | | | 2,500 |
| 12/22/65 | | 3,000 | | 5,500 |
| 12/23/65 | 700 | | | 6,200 |

[2] Since the ultimate issue we must decide is whether petitioner made excessive "loans" within the meaning of sec. 542(c)(6)(D), we have sought to employ a neutral term to characterize the transfers of funds between petitioner and Cohen, J & R, and Mortgage. For our purposes, the term "withdrawal" has no legal significance; we use it merely as a convenient shorthand expression for the transfers in dispute.

The $9,000 balance as of January 1, 1965, consisted of withdrawals made by Cohen prior to 1965. On its books, petitioner recorded these pre-1965 withdrawals as well as Cohen's withdrawals of $500 on January 10, 1965, $1,500 on November 5, 1965, $1,000 on December 13, 1965, and $700 on December 23, 1965, as demand loans.

On its books, petitioner recorded Mortgage's $45,500 withdrawal of September 3, 1965, as a loan. Petitioner also recorded Mortgage's withdrawal of $3,000 on December 22, 1965, as a loan. The $45,500 withdrawal was recorded on a loan ledger card which provided for 6-percent interest payable on the third of each month. With respect to this withdrawal petitioner received interest payments of $200 on October 7, 1965, $62.50 on November 8, 1965, and $56.25 on December 3, 1965, for a total of $318.75.

On its general ledger, petitioner charged the two withdrawals made by Mortgage on July 19, 1965, and August 2, 1965, of $25,000 and $20,000, respectively, to a suspense account. Petitioner also charged the two withdrawals made by J & R on June 14, 1965, and July 1, 1965, of $17,000 and $20,000, respectively, to a suspense account. Petitioner used suspense accounts to enter items which would be offset or canceled out within a relatively short time. Thus, when Mortgage and J & R repaid these withdrawals, petitioner credited the suspense accounts accordingly.

Cohen withdrew money from petitioner because he needed it for temporary investments but he gave no notes to petitioner to evidence these withdrawals. However, on his income tax return for 1965, Cohen deducted as interest on business indebtedness $3,754.37 of which $318.75 was paid to petitioner.

From 1957 to 1966 petitioner authorized three issues of registered bonds. In 1957 petitioner issued a series of debenture bonds that were to become due on September 15, 1967. These bonds paid interest quarterly at the rate of 6 percent per year. In 1959 petitioner authorized a second series of bonds which were issued at various times after 1959 and which became due 10 years from the date of issue. This second issue consisted of accumulative or discount bonds which were sold at a discounted figure and which increased in value at the rate of 6 percent per year compounded quarterly so that at the end of 10 years the compounded value would equal the face value. In 1966 petitioner issued a series of debenture bonds which would become due on September 15, 1976. This third series of bonds was intended as a replacement for the 1957 issue and provided for the quarterly payment of interest at the rate of 6 percent per year. All of the 1957 bonds were either exchanged for bonds in the 1966 series or were redeemed.

Without exception, and regardless of the amount or the issue, any

bond would be redeemed almost immediately upon the request of the holder thereof. In redeeming a bond, petitioner would take possession of it, cancel it, and issue a check to the person surrendering it. A bookkeeper recorded all such bond redemptions in a bond register, and filed each canceled bond along with an attached copy of the canceled check.

Many of the bonds were so redeemed, and, as petitioner's president, Cohen always treated the bonds as demand certificates of deposit in that he never held up the redemption of any bond.

At all times during 1965, Cohen's holdings of petitioner's bonds exceeded the total amount of withdrawals he and his related companies had made from petitioner. Cohen kept all of his bonds in petitioner's safe. He did not use his own personal safe-deposit box for this purpose.

## OPINION

In 1965 petitioner's personal holding company income (as defined in section 543(a)) exceeded 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)). By virtue of the general rule set out in section 542(a), petitioner would have been a personal holding company all of whose undistributed personal holding company income (as defined in section 545) would have been subject to the onerous personal holding company tax imposed by section 541.

Petitioner claims, however, that it is excepted from the definition of personal holding company because it is a "lending or finance company" meeting all of the conditions of section 542(c)(6).[3] Respondent, on the other hand, argues that petitioner has not met the requirements of section 542(c)(6)(D). He contends that at various times

---

[3] SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY.

(c) EXCEPTIONS.—The term "personal holding company" as defined in subsection (a) does not include—

\* \* \* \* \* \* \*

(6) a lending or finance company if—

(A) 60 percent or more of its ordinary gross income (as defined in section 543(b)(1)) is derived directly from the active and regular conduct of a lending or finance business ;

(B) the personal holding company income for the taxable year (computed without regard to income described in subsection. (d)(3) and income derived directly from the active and regular conduct of a lending or finance business, and computed by including as personal holding company income the entire amount of the gross income from rents, royalties, produced film rents, and compensation for use of corporate property by shareholders) is not more than 20 percent of the ordinary gross income ;

(C) the sum of the deductions which are directly allocable to the active and regular conduct of its lending or finance business equals or exceeds the sum of—

(i) 15 percent of so much of the ordinary gross income derived therefrom as does not exceed $500,000, plus

(ii) 5 percent of so much of the ordinary gross income derived therefrom as exceeds $500,000 but not $1,000,000 ; and

(D) the loans to a person who is a shareholder in such company during the taxable year by or for whom 10 percent or more in value of its outstanding stock is owned directly or indirectly (including, in the case of an individual, stock owned by members of his family as defined in section 544(a)(2)), outstanding at any time during such year do not exceed $5,000 in principal amount ;

during 1965 petitioner had made loans in excess of $5,000 to its majority stockholder (Cohen) and his related business enterprises. Thus, the sole question we must decide is whether certain withdrawals made from petitioner by Cohen, by his sole proprietorship (Mortgage), and by a partnership in which he held a half interest (J&R), were loans within the meaning of section 542(c) (6) (D).[4]

Petitioner argues that its transfers of funds to Cohen, Mortgage, and J & R were in the nature of withdrawals, that "all that occurred was [that] Cohen withdrew money due by petitioner to him, which he subsequently replaced, and the company [petitioner] made no loans to him of any kind," and that "Cohen was only withdrawing his own money." The characterization of the transfers as withdrawals serves little purpose because many withdrawals may, at the same time, constitute loans. In any event, the issue we must decide is not whether the transfers in question were withdrawals, but whether they were indeed loans within the meaning of section 542(c) (6) (D).

Petitioner apparently is urging the operation of some type of setoff theory. It contends that since it always owed Cohen more in the form of bonds than Cohen owed it as a result of the withdrawals in question and that since the bonds were in fact treated as the equivalent of demand certificates of deposit, there were in fact no loans made by petitioner to Cohen or to Cohen's related companies. In answering this contention we should first remark that the existence of reciprocal indebtedness between an individual and a lending institution would not be unusual. For example, if an individual were to borrow $500 from a bank while maintaining a $1,000 demand account in the same bank, it could hardly be said that the bank had not made a loan to that individual.

But, analogy is at best an imprecise tool. We must look to the peculiar facts and circumstances surrounding the transfers in question in order to determine whether they were loans. *Harlan* v. *United States*, 409 F. 2d 904, 907 (C.A. 5, 1969) (advances held loans rather than contributions to capital). In so doing, we see no reason to give any different meaning to the term "loans" as used in section 542(c) (6)

---

[4] In applying the language of sec. 542(c) (6) (D), respondent has assumed, and petitioner has made no contention otherwise, that both Mortgage and J & R were each "a person who is a shareholder in such company [petitioner] during the taxable year by or for whom 10 percent or more in value of its outstanding stock is owned directly or indirectly." While Mortgage was Cohen's alter ego and could be considered as owning "directly or indirectly" Cohen's stock in petitioner, J & R was a partnership in which Cohen's interest was only 50 percent. Since J & R was not an "individual" and since none of the constructive-ownership rules of sec. 544(a) are expressly applicable for the purposes of determining stock ownership under sec. 542(c)(6)(D), we would be left to an a priori determination of whether J & R owned "directly or indirectly" 10 percent or more in value of petitioner's outstanding stock. However, because both Cohen and Mortgage each made withdrawals which exceeded $5,000 for long periods during 1965, we need not deal with the potentially delicate questions of attribution of ownership or allocation of J & R's withdrawals among its partners.

(D) than has been established by previous cases which have sought to distinguish loans from such items as dividends, see, e.g., *Chism's Estate* v. *Commissioner*, 322 F. 2d 956 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; *Lou Levy*, 30 T.C. 1315 (1958) ; 1 Mertens, Law of Federal Income Taxation, sec. 9.21 (1969) and cases cited; cf. *Donisi* v. *Commissioner*, 405 F. 2d 481 (C.A. 6, 1968), affirming a Memorandum Opinion of this Court; gifts, see *Elizabeth N. Rude*, 48 T.C. 165 (1967) ; *Harry K. Oliphint*, 24 T.C. 744 (1955), affd. 234 F. 2d 699 (C.A. 5, 1956) ; contributions, see *Zimmerman* v. *United States*, 318 F. 2d 611 (C.A. 9, 1963) ; *Dallas Rupe & Son*, 20 T.C. 363 (1953) ; or income, see *United States* v. *Williams*, 395 F. 2d 508 (C.A. 5, 1968) ; *Kohler-Campbell Corporation* v. *United States*, 298 F. 2d 911 (C.A. 4, 1962) ; *New England Tank Industries, Inc.*, 50 T.C. 771 (1968), affd. 413 F. 2d 1038 (C.A. 1, 1969).

In determining whether a transaction constitutes a loan the intention of the parties has been considered controlling. *Berthold* v. *Commissioner*, 404 F.2d 119, 122 (C.A. 6, 1968), affirming a Memorandum Opinion of this Court. In the instant case, however, the fact that petitioner and Cohen were so closely related makes determination of their intention difficult. We must rely upon some of the more objective criteria employed in earlier cases.

In the cited cases the intention to repay and the existence of provisions for interest appear to be two very important factors in determining whether a transaction establishes a bona fide debtor-creditor relationship.[5] Thus, we have inferred from the fact that Cohen and his related enterprises repaid the amounts in question with reasonable promptness that the requisite intention to repay was present. Also, petitioner's books indicate that it received over $300 in interest in respect of the $45,500 withdrawn by Cohen's sole proprietorship, Mortgage. While at trial Cohen did not remember paying this interest to petitioner, he apparently deducted it on his individual income tax return for 1965. Finally, many of the withdrawals were recorded as loans or demand loans on petitioner's books.

These facts taken together indicate that the withdrawals were loans within the common meaning of that term and, hence, within the meaning of section 542(c)(6)(D).

Petitioner relies on *Oak Hill Finance Co.*, 40 T.C. 419 (1963), to bolster its argument that the withdrawals in question were not bona fide loans within the contemplation of the statute. That case involved

---

[5] The relevant dictionary definitions also focus upon these elements. Thus, "loan" is defined as "money lent at interest" or "something lent for the borrower's temporary use on condition that it or its equivalent be returned" while, "lend" means "to give into another's keeping for temporary use on condition that the borrower return the same or its equivalent" or "to let out (money) for temporary use on condition that it be repaid with interest at an agreed time." Webster's New International Dictionary (3d ed. 1961).

the application of a predecessor of the present section 542(c)(6) and concerned the question of whether outstanding notes receivable by the taxpayer were loans or whether they were "intercompany transfers of funds." There we found that the taxpayer had not made a loan because it had acted as an "agent" or a "mere conduit" through which the flow of borrowed funds was channeled from a third party to the taxpayer's parent corporation. In the instant case the origin of the transfers in question was petitioner and not some outside source; petitioner was not acting as an "agent" or "conduit."

We also found in *Oak Hill* that various formalities appeared to lack any "underlying substance." In particular we were unable to find that any interest had been paid on the notes in question. Here, the converse was true. Certain formalities were lacking,[6] but the substance of the transactions as evidenced by the interest payments convince us that the withdrawals were loans.

Petitioner states that no tax benefits inured to Cohen as a result of his withdrawal of funds from petitioner. Even if such a contention were true, we would be obliged to apply the personal holding company tax. In any case we do not agree with petitioner. When Cohen withdrew funds from petitioner for temporary investments, he availed himself of the "incorporated pocketbook" against whose operation the personal holding company provisions were first specifically aimed. See H. Rept. No. 704, 73d Cong., 2d Sess., p. 11 (1934). If Cohen was able to accumulate income in petitioner's coffers and was later able to borrow those accumulations for personal investments, then he did realize the very real benefit of having amassed that income at the relatively low corporate tax rate. Furthermore, in deducting the interest he paid to petitioner with respect to at least one of those loans, Cohen performed the very act which was intended to be proscribed by the language pertaining to the $5,000 limit on loans to 10 percent stockholders.[7]

---

[6] For instance, Cohen provided neither security for nor notes evidencing the withdrawals. In view of the close relation of the parties such provision would have been mere formality.

[7] In 1942 Congress extended to "loan or investment" corporations exemptions from the personal holding company provisions but only on the condition that "the loans to a person who is a shareholder in such corporation during such taxable year by or for whom 10 per centum or more in value of its outstanding stock is owned directly or indirectly (including in the case of an individual, stock owned by the members of his family as defined in section 503(a)(2)) [of the Internal Revenue Code of 1939] outstanding at any time during such year do not exceed $5,000 in principal amount." [Revenue Act of 1942, 56 Stat. 894, amending sec. 501(b) of the Internal Revenue Code of 1939.] Congress clearly described the purpose of this language (which was a predecessor to the virtually identical language of present sec. 542(c)(6)(D)) in H. Rept. No. 2333, 77th Cong., 2d Sess., p. 135, 1942-2 C.B. 472:

"The possibility that a stockholder may avoid individual surtaxes by obtaining a substantial loan from the company and deducting the interest paid thereon is practically eliminated by the limitation on loans imposed by State law and is effectively prevented by the limitation incorporated in the provision granting exemption."

490

Finally, petitioner seems to suggest that the fact that respondent's agents did not treat similar withdrawals as loans in a prior taxable period may be equated to respondent's immutable determination that such withdrawals were something other than loans. Although petitioner's argument is far from clear on this point, we note that respondent would not be estopped from determining a deficiency in 1965 because of the inaction of his agents in a prior taxable period. *David O. Rose*, 55 T.C. 28 (1970).

The imposition of the personal holding company tax upon a corporation otherwise seemingly active in the operation of a lending and finance business may seem harsh, but Congress offered such institutions only a limited exception from the personal holding company definition. We may not extend those limits beyond the legislative mandate.

*Decision will be entered for the respondent.*