PAN AMERICAN ACCEPTANCE CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pan American Acceptance Corp. v. Commissioner
Docket No. 16726-85
United States Tax Court
T.C. Memo 1989-440; 1989 Tax Ct. Memo LEXIS 440; 57 T.C.M. (CCH) 1360; T.C.M. (RIA) 89440; August 21, 1989
Juan F. Vasquez and Linda M. Drozd (specially recognized), for the petitioner. David H. Peck and David E. Whitcomb, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency of $ 34,355.50 in petitioner's income tax for the taxable year 1982. The issue for decision is whether petitioner qualifies under section 542(c)(6)[1] for the lending or finance company exception to personal holding company classification. To resolve this issue, we must decide whether a $ 26,000 *442 withdrawal from petitioner by Donate Cangelosi (who constructively owns more than 10 percent in value of petitioner's outstanding stock) was a loan, as respondent contends, or an unauthorized withdrawal which was later repaid, as petitioner contends. If the $ 26,000 withdrawal was a loan, then petitioner would fail to satisfy the section 542(c)(6)(D) requirement for exception to personal holding company classification. For the reasons set forth herein, we conclude that the withdrawal was a loan. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, a closely-held Texas corporation organized in 1971, had its principal place of business in San Antonio at the time the petition herein was filed. At all relevant times, it was licensed as an insurance premium finance company; as such, the major source of its income was derived by *443 making short term loans to persons desiring to finance their insurance premiums. At all relevant times, petitioner's outstanding common stock was owned as follows: Shareholder
Percentage Interest
Anthonette Cangelosi
74.97% Donate Cangelosi
3.95%
Virginia Cangelosi
3.95%
Samuel Cangelosi
3.95%
Anthony Cangelosi, Jr.
3.94%
Carol Cangelosi
3.94%
Victor Cangelosi
3.94%
Angelina P. Valencia
1.36%
During 1982, Donate Cangelosi (Mr. Cangelosi) was petitioner's president and one of its directors. His mother, Anthonette Cangelosi, was petitioner's vice-president and chairman of its board of directors. On July 12, 1982, Mr. Cangelosi caused a company check to be issued to his order in the amount of $ 26,000. He did not seek or obtain specific corporate authorization for the withdrawal, nor did he discuss the withdrawal with any of the other officers or directors. No note was given to evidence the $ 26,000 disbursement. Mr. Cangelosi repaid the withdrawal by personal check on March 11, 1983. On the March 11th check, the notation to "repay debt" appeared. Although he had use of the money for eight months, no interest was paid. An entry in petitioner's *444 cash disbursements journal reflected the withdrawal as an "officer's loan." When the $ 26,000 was returned to petitioner, the "Loan to Officer" account was credited by the $ 26,000 amount. The financial statements prepared by petitioner's certified public accountants reflected the withdrawal as a loan to Mr. Cangelosi which was repaid in March 1983. Petitioner's directors became aware of Mr. Cangelosi's withdrawal and return of the $ 26,000 when they received a copy of petitioner's audited financial statements in May 1983. As a remedial measure, in July 1983 the directors adopted a resolution requiring that all future company checks bear the signature of two officers. Respondent determined that the $ 26,000 withdrawal from petitioner by Mr. Cangelosi was a loan which prevented petitioner from qualifying for the lending or finance company exception to personal holding company classification. Petitioner contends that the $ 26,000 withdrawal was unauthorized and hence did not constitute a loan. OPINION Evidentiary Matters
At trial and on brief, petitioner raised certain evidentiary objections which we shall initially address. The following documents were made a *445 part of the stipulation of facts: 1. Petitioner's 1982 income tax return; 2. Mr. Cangelosi's $ 26,000 check made payable to petitioner (the Check); 3. Petitioner's 1982 audited financial statements; 4. A page from petitioner's cash disbursements journal for July 1982; and
5. A page from petitioner's general ledger for the period ending March 31, 1983 (the foregoing documents are hereinafter collectively referred to as the "Stipulated Documents"). In the stipulation of facts, petitioner noted its objection to the admissibility of the Stipulated Documents on the grounds that the withdrawal was not authorized by petitioner's board of directors or shareholders. Such objection goes to the weight of the evidence rather than to its admissibility. At trial, petitioner raised hearsay objections to those portions of the Stipulated Documents which classify the withdrawal as a loan. We overruled the objection, but allowed the parties to address this matter on brief. Having again considered petitioner's objections, we conclude once more that the Stipulated Documents are admissible. The Stipulated Documents (other than the Check) are admissions of a party; hence, they are not *446 hearsay. Rule 801(d)(2), Federal Rules of Evidence.[2] Further, they are business records within the purview of Rule 803(6) of the Federal Rules of Evidence[3] which would constitute exceptions to the hearsay rule. The Check reflects Mr. Cangelosi's intent and hence is admissible as an exception to the hearsay rule under Rule 803(3), Federal Rules of Evidence.
*447 Petitioner further argues that a proper foundation has not been laid for the Stipulated Documents. We disagree. The purpose of the Court's stipulation process [4] is to permit a more expeditious trial of the case. Stipulations obviate the need for counsel to provide any foundation for admissibility. See United States v. Renfro, 600 F.2d 55, 59 (6th Cir. 1979). *448 Petitioner did not, as provided by Rule 91(d), [5] note any hearsay objections on the stipulation. At the commencement of trial, petitioner raised limited hearsay objections which went to the characterization of the withdrawal as a loan rather than to the entire document. In fact, petitioner agreed to the authenticity of the Stipulated Documents. Thus, we reject petitioner's argument that the Stipulated Documents are inadmissible because a proper foundation had not been laid. On brief, petitioner further attempts to raise hearsay objections as to all the documents comprising the Stipulated Documents. As these objections are untimely, we decline to consider them. Rule 91(d). Section 542(c)(6)(D) Issue
We now turn to the substantive issue, namely, whether petitioner satisfies all the *449 requirements for the lending or finance company exception to personal holding classification. Petitioner concedes that but for section 542(c)(6) it is a personal holding company as defined in section 542(a); respondent concedes that for purposes of determining whether petitioner qualifies for the lending or finance company exception to personal holding company classification, the requirements of section 542(c)(6)(A), (B), and (C) are satisfied. [6] Thus, the controversy herein is whether the $ 26,000 withdrawal by Mr. Cangelosi in July 1982 was a loan within the meaning of section 542(c)(6)(D). *450 Petitioner contends that the withdrawal was not a loan because it was not authorized by the board of directors or the shareholders. Further, petitioner argues that the withdrawal should not be characterized as a loan because (1) a note was not executed and (2) interest was not paid. To determine whether the withdrawal was a loan within the meaning of section 542(c)(6)(D), we must look to the peculiar facts and circumstances surrounding the transaction. Fidelity Commercial Co. v. Commissioner, 55 T.C. 483, 487 (1970), affd. F.2d (4th Cir. 1971, 71-2 U.S.T.C. par. 9667, 28 A.F.T.R. 2d 71-5751). In this respect, the intention of the parties is of crucial importance. Fidelity Commercial Co., 55 T.C. at 488; Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. a Memorandum Opinion of this Court. Mr. Cangelosi returned the $ 26,000 withdrawal to petitioner with reasonable promptness (within approximately 8 months) to evidence an intention of repayment. Fidelity Commercial Co. v. Commissioner, 55 T.C. at 488. *451 In addition, he noted on the check of March 11, 1983 that the funds were to repay his debt. In our opinion, these acts indicate that Mr. Cangelosi intended the withdrawal to be a loan. Insofar as petitioner's intent is concerned, such can best be gleaned from the documentary evidence since strictly speaking, a corporation (not a sentient being) cannot form an intent. Within this context, we note that what passes as corporate intent is in reality the aggregate intention of the corporation's officers and employees acting within their capacity as corporate agents. [7]
A transaction which is reported as a loan on a corporation's books and financial statements is indicative that the corporation intended the transaction to be a loan. Pierce v. Commisioner, 61 T.C. 424, 430 (1974); Fidelity Commercial Co. v. Commissioner, 55 T.C. at 488. Here, petitioner's 1982 tax return, 1982 audited financial statements, cash disbursements journal, and general ledger *452 reflect the transaction as a loan. Thus, both petitioner and Mr. Cangelosi treated the $ 26,000 withdrawal as a loan. Petitioner argues that under Texas law, as it existed in 1982, a corporation did not have the power to lend money to its officers and directors. [8]Under Texas law, however, the lack of corporate capacity has generally been abolished as a claim or defense. [9] And we doubt whether a borrower could escape repayment on the ground that a Texas corporate lender lacked authority to make the loan. See Rogers v. Public Service Employees Credit Union, 112 S.W. 2d 258 (Tex. Civ. App. 1937). *453 In this case, it is undisputed that the withdrawal occurred. We are not convinced that the lack of authorization with respect to the withdrawal or the fact that during 1982 a Texas corporation was not empowered under state law to lend money to its officers and directors alters the nature or character of a withdrawal which has in fact taken place. The absence of a promissory note or security and the failure to charge or pay interest are not conclusive in determining that a loan was not intended. Clark v. Commissioner, 266 F.2d 698, 711 (9th Cir. 1959), affg. T.C. Memo. 1957-129. Withdrawals have been held to be loans where no promissory note was present and no interest was charged or paid. Fidelity Commercial Co. v. Commissioner, 55 T.C. at 488; White v. Commissioner, 17 T.C. 1562 (1952). Based upon the record before us, we conclude that the withdrawal by Mr. Cangelosi was a loan within the meaning of section 542(c)(6)(D). Accordingly, petitioner does not meet all the requirements for the lending or finance company *454 exception to personal holding company classification. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. Except as otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Rule 801(d)(2), Federal Rules of Evidence provides: (d) Statements which are not hearsay. A statement is not hearsay if -- * * * (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. ↩
3. Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. * * * (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.↩
4. Rule 91(a) provides, in part, as follows: RULE 91. STIPULATIONS FOR TRIAL (a) Stipulations Required: (1) General↩: The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case, regardless of whether such matters involve fact or opinion or the application of law to fact. Included in matters required to be stipulated are all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute. Where the truth or authenticity of facts or evidence claimed to be relevant by one party is not disputed, an objection on the ground of materiality or relevance may be noted by any other party but is not to be regarded as just cause for refusal to stipulate. The requirement of stipulation applies under this Rule without regard to where the burden of proof may lie with respect to the matters involved. Documents or papers or other exhibits annexed to or filed with the stipulation shall be considered to be part of the stipulation.
5. Rule 91(d) provides as follows: (d) Objections: Any objection to all or any part of a stipulation should be noted in the stipulation, but the Court will consider any objection to a stipulated matter made at the commencement of the trial or for good cause shown made during the trial.↩
6. Section 542(c), in pertinent part, provides: The term "personal holding company" as defined in subsection (a) does not include -- * * * (6) a lending or finance company if -- (A) 60 percent or more of its ordinary gross income (as defined in section 543(b)(1)) is derived directly from the active and regular conduct of a lending or finance business; (B) the personal holding company income for the taxable year (computed without regard to income described in subsection (d)(3) and income derived directly from the active and regular conduct of a lending or finance business, and computed by including as personal holding company income the entire amount of the gross income from rents, royalties, produced film rents, and compensation for use of corporate property by shareholders) is not more than 20 percent of the ordinary gross income; (C) the sum of the deductions which are directly allocable to the active and regular conduct of its lending or finance business equals or exceeds the sum of -- (i) 15 percent of so much of the ordinary gross income derived therefrom as does not exceed $ 500,000, plus (ii) 5 percent of so much of the ordinary gross income derived therefrom as exceeds $ 500,000; and (D) the loans to a person who is a shareholder in such company during the taxable year by or for whom 10 percent or more in value of its outstanding stock is owned directly or indirectly (including, in the case of an individual, stock owned by members of his family as defined in section 544(a)(2)↩), outstanding at any time during such year do not exceed $ 5,000 in principal amount.
7. Such "corporate intent" may or may not be reflected in corporate resolutions. Indeed, corporate resolutions (or any other corporate formality) often are lacking in closely-held corporations.↩
8. Article 2.02A(6) of the Texas Business Corporation Act provided, in relevant part, that "each corporation shall have power * * * (6) To lend money to, * * * its employees, but not to its officers and directors." Effective August 29, 1983, Article 2.02A(6) was amended to permit loans to officers and directors if the loan reasonably may be expected to benefit the lending corporation. ↩
9. Article 2.04A of the Texas Business Corporation Act provides that "Lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity."↩