T.C. Memo. 2001-52


UNITED STATES TAX COURT


REGINALD AND RONDA CHARLSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

GREAT AMERICAN STAGELINE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12840-99, 12905-99.     Filed February 28, 2001.


Reginald and Ronda Charlson, pro sese in docket No. 12840-99.

Reginald Charlson (an officer), for petitioner in docket No. 12905-99.

<u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice dated April 21, 1999, respondent determined the following deficiencies relating to petitioners' Federal income taxes:

Reginald and Ronda Charlson, docket No. 12840-99

| Year | Deficiency |
|------|------------|
| 1994 | $125,027 |
| 1995 | 26,775 |
| 1996 | 30,058 |

Great American Stageline, Inc., docket No. 12905-99

| Year | Deficiency |
|------|------------|
| 1995 | $25,749 |
| 1996 | 38,652 |
| 1997 | 841 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  After concessions, the issue for decision is whether any petitioner is entitled to an investment tax credit (ITC) that was carried forward from 1985.

## FINDINGS OF FACT

When their respective petitions were filed, Reginald and Ronda Charlson resided in Westlake Village, California, and Great American Stageline, Inc. (Great American), had its principal place of business in Newbury Park, California.

The Charlsons owned two corporations, Great American, a C corporation, formed in 1974, and C & C Investments, Inc. (C & C),

an S corporation, formed in 1977. Mr. and Mrs. Charlson each owned 50 percent of each corporation. Great American operated intercity buses that were purchased by, and leased from, C & C.

In 1985, C & C purchased, and placed in service, seven intercity buses. C & C leased these buses to Great American from January 1, 1986, through January 31, 1990, a term of 49 months. At the conclusion of the first lease, C & C and Great American entered into a second lease for an additional 19 months, from February 1, 1990, through August 31, 1991. The leases were negotiated separately and did not contain options to renew, and the payment amounts and lease terms were different. C & C purchased the buses for the sole purpose of leasing them to Great American.

The buses were qualified investment property which qualified for an ITC pursuant to section 38. The useful life of each of the buses was 9 years.

The Charlsons' subsequent tax returns claimed the ITC carried over from 1985 and passed through C & C. In a prior audit, respondent examined the Charlsons', but not C & C's, 1989 Federal income tax return, without challenging the ITC carryover.

OPINION

1. Eligibility for Investment Tax Credit

Section 38 allows an ITC, for qualified investments, the amount of which is determined under section 46. Section

46(e)(3), as in effect in 1985, limited the availability of the ITC to noncorporate lessors, including S corporations. Noncorporate lessors were entitled to the ITC only if either: (A) The lessor manufactured or produced the leased property; or (B) the property was leased for a term of less than 50 percent of the useful life of the property, and the section 162 deductions allowable to the lessor during the first 12 months after transfer to the lessee exceeded 15 percent of the rental income. See sec. 46(e)(3). The parties agree that C & C did not manufacture or produce the buses. To determine whether the lease term exceeded 50 percent of the useful life of the property, two or more successive leases entered into, relating to the same or substantially similar items of section 38 property, are aggregated. See sec. 1.46-4(d)(4), Income Tax Regs. Whether the terms of two or more leases are aggregated depends on the facts and circumstances, and our determination of the duration of the lease is based on the "realistic contemplation" of the parties when the property was placed in service. Borchers v. Commissioner, 95 T.C. 82, 88-89 (1990)(concluding that if "the substance of the transaction is that the lessee will continue leasing the property beyond the period stated in the lease, then the specified lease term is disregarded and the lease is considered to be of indefinite length"), affd. 943 F.2d 22 (8th

Cir. 1991); see also <u>Owen v. Commissioner</u>, 881 F.2d 832, 834 (9th Cir. 1989), affg. T.C. Memo. 1987-375.

Although the leases were negotiated separately and the terms changed, C & C purchased the buses for the sole purpose of leasing them to Great American. At the time the buses were placed in service and the first lease was entered into, the parties believed C & C would lease the buses to Great American beyond the period stated in the lease. Indeed, the term of the two leases, when aggregated, was 68 months, more than half the 9-year useful life of the buses. In addition, petitioners failed to introduce any evidence relating to whether their allowable section 162 deductions exceeded 15 percent of the rental income received by C & C during the first 12 months of the lease. In short, the lease did not meet the requirements of section 46(e)(3). Accordingly, the Charlsons are not entitled to the ITC relating to the years in issue.

We also note that Great American was not entitled to claim the ITC. Section 48(d) allows a lessor to elect to treat the lessee as the purchaser if the lessor files a statement of the election. See sec. 1.48-4(a), Income Tax Regs. Petitioners did not file such an election. To the contrary, C & C claimed the credit in 1985 and passed it through to the Charlsons.

2.   Estoppel Relating to Prior Audit

Petitioners contend respondent is estopped from challenging the Charlsons' carryover of the credit, because the Charlsons' Federal income tax return for 1989 was audited and the ITC carryover was not challenged.  Respondent is not bound, however, to allow the same treatment in a subsequent year, even where similar erroneously reported items were unchallenged in an audit of a prior year.  See Union Equity Cooperative Exch. v. Commissioner, 58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973); Fidelity Commercial Co. v. Commissioner, 55 T.C. 483, 490 (1970), affd. per order (4th Cir., Sept. 1, 1971). Accordingly, respondent was not estopped from disallowing the carryover of the ITC claimed by the Charlsons in 1994, 1995, and 1996.

Contentions we have not addressed are moot, irrelevant, or meritless.

To reflect the foregoing,

Decisions will be entered

under Rule 155.